**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN LONG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | No. 4:20-cv-1783 |
| | ) | |
| | ) | |
| DEARBORN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| Defendant | ) | |

**APPENDIX TO NOTICE OF REMOVAL**

Defendant Dearborn Life Insurance Company f/k/a Dearborn National Life Insurance Company ("Dearborn") respectfully submits the following Appendix to Notice of Removal, pursuant to Local Rule 81.

1.      Attached to this Appendix are the Citation served on Dearborn, the Original Petition (including two exhibits), the Answer filed by Dearborn, and the state court docket sheet.

2.      The following is a list of all counsel of record:

**Plaintiff:**

Hudson T. Ellis
414 McCallie Avenue
Chattanooga, Tennessee 37402
ellish@buchanandisability.com
423/634-2506
423/634-2505 (fax)

Amar Raval
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
araval@bergplummer.com
713/526-0200
832/615-2665 (fax)

**Defendant**:

Andrew F. MacRae
Levatino|Pace PLLC
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
andrew@lpfirm.com
512/ 637-1581
512/ 637-1583 (fax)

Respectfully submitted,

By:     /s/ Andrew F. MacRae
ANDREW F. MACRAE
*State Bar No. 00784510*
LEVATINO|PACE PLLC
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
Tel:   (512) 637-1581
Fax:  (512) 637-1583

Attorneys for Defendant

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Appendix to Notice of Removal has been filed through the CM/ECF system on this 22nd day of May, 2020. A copy of this Appendix has also been forwarded via e-mail, to the following counsel of record:

Hudson T. Ellis
414 McCallie Avenue
Chattanooga, Tennessee 37402
ellish@buchanandisability.com

Amar Raval
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
araval@bergplummer.com

/s/ Andrew F. MacRae
ANDREW F. MACRAE

CAUSE NO. 202025025

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO: 865614  TRACKING NO: 73744574

| | |
|---|---|
| Plaintiff: | In The 189th |
| LONG, STEVE | Judicial District Court of |
| vs. | Harris County, Texas |
| Defendant: | 201 CAROLINE |
| DEARBORN NATIONAL LIFE INSURANCE COMPANY | Houston, Texas |

## CITATION CORPORATE

**THE STATE OF TEXAS**
**County of Harris**

**To:   DEARBORN NATIONAL LIFE INSURANCE COMPANY (A DOMESTIC OR FOREIGN CORPORATION)**
**MAY BE SERVED WITH PROCESS BY AND THROUGH ITS REGISTERED AGENT FOR SERVICE OF PROCESS CORPORATION SERVICE COMPANY**
**OR WHEREVER IT MAY BE FOUND**
**211 EAST 7TH STREET SUITE 620, AUSTIN TX 78701**

Attached is a copy of: ORIGINAL PETITION

This instrument was filed on April 22, 2020 in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your Attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you.

This citation was issued on April 22, 2020, under my hand and seal of said court.

Issued at the request of:

Raval, Amar
3700 BUFFALO SPEEDWAY, SUITE 1150
HOUSTON, TX 77098
713-526-0200
Bar Number: 24046682

MATTHEWS

*Marilyn Burgess*

Marilyn Burgess, District Clerk

Harris County, Texas
201 CAROLINE  Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated          By:CHRISTOPHER

4/22/2020 10:08 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42468543
By: Cynthia Clausell-McGowan
Filed: 4/22/2020 10:08 AM

CAUSE NO. 2020-_____

| | |
|---|---|
| STEVEN LONG, | IN THE DISTRICT COURT OF |
| Plaintiff, | HARRIS COUNTY, TEXAS |
| vs. | |
| DEARBORN NATIONAL LIFE INSURANCE COMPANY, | _____JUDICIAL DISTRICT |
| Defendant. | |

## ORIGINAL PETITION

Plaintiff, Steven Long (hereinafter "Plaintiff") files this Original Complaint against Defendant Dearborn National Life Insurance Company and would respectfully show the following:

### PARTIES

1.     Plaintiff is currently, and was at all relevant times, a resident of Galveston County, Texas.

2.     Upon information and belief, Defendant Dearborn National Life Insurance Company (hereinafter, "Dearborn National"), is a domestic or foreign corporation licensed to do business and doing business in the State of Texas. It may be served with process by and through its registered agent for service of process, Corporation Service Company located at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

### JURISDICTION AND VENUE

3.     This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this Court has jurisdiction.

1

4.      This Court has jurisdiction because the amount in controversy exceeds the jurisdictional minimum. Further, it has jurisdiction under Texas Civil Practice and Remedies Code Sections 17.041 and 17.042 because at the time of the occurrence in question, Dearborn National was a nonresident doing business in the State of Texas and committed to performing a contract in whole or in part in the State of Texas.

5.      Venue is proper within Harris County, Texas because Defendant conducts business and administers insured benefits within this jurisdiction.

### Claims for Relief

**6.**      Pursuant to Tex. R. Civ. Proc. 47, Plaintiff seeks monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees. Pleading more specifically, Plaintiff seeks monetary relief of less than $75,000, and a declaratory judgment that his claim is covered under the Dearborn National Policy.

### FACTUAL BACKGROUND

7.      Dearborn National is in the insurance business and sells various forms of life insurance, accidental death and dismemberment insurance, and disability insurance. The promise of disability insurance is to provide income protection to an employee if that employee becomes disabled as a result of injury or sickness.

8.      Prior to his disability, Steven Long was employed by University of Texas Medical Branch-Galveston (hereinafter "UTMB-Galveston") as a Registered Nurse.

9.      UTMB-Galveston operates as an academic medical center and is part of the University of Texas System; a governmental entity of the State of Texas. Because UTMB-Galveston's status is part of an entity of the State of Texas, individuals employed by UTMB-Galveston are employees of the State of Texas.

2

10.     UTMB-Galveston offers group long-term disability insurance as part of an employee benefit plan that qualifies as a "governmental plan" as the term is defined under 29 U.S. Code §1002 (32).  As a "governmental plan" under 29 U.S. Code §1002(3), the group long-term disability insurance offered by UTMB-Galveston is not governed, controlled or subject to the procedures and rules of the Employee Retirement Income Security Act ("ERISA").  Instead, the UTMB-Galveston employee benefit plan is governed, controlled by and subject to the procedures and rules promulgated by the State of Texas.

11.     Benefits under UTMB-Galveston's LTD Plan are insured by Group Policy Number GFZ71778:723 (the "Policy"), issued by Defendant to UTMB-Galveston.  (A copy of the Policy is attached hereto and incorporated herein as Exhibit 1).

12.     Plaintiff, by virtue of his employment with UTMB-Galveston, is a participant of the UTMB-Galveston employee benefit plan and is enrolled in the group long-term disability insurance plan.  Plaintiff ceased work due to disability on May 2, 2016 while covered under the LTD Plan.  Plaintiff's disability results from the combination of degenerative disc disease, a lower back injury and history of intensive spinal fusion surgery.  Due to his spinal issues, Plaintiff has been and continues to be disabled as defined by the provisions of the LTD Plan and relevant policies.

13.     Plaintiff filed an application for LTD benefits under the Policy.

14.     By letter dated September 8, 2016, Defendant approved Plaintiff's LTD claim and awarded him monthly benefits in the gross amount of $4,263.55 commencing on July 31, 2016.  Thereafter, Plaintiff received LTD benefits for the period between July 31, 2016 through July 30, 2018.

3

15.     Concurrently, Plaintiff applied for Social Security Disability Benefits and was approved based on a determination by the Social Security Administration that he is disabled from performing any occupation as of May 5, 2016.

16.     By letter dated December 10, 2018, Defendant terminated Plaintiff's LTD claim relying exclusively on the analyses and conclusions of its own vocational and medical consultants.

17.     Plaintiff appealed that termination by letter dated June 7, 2019 (a copy of which is attached hereto and incorporated as Exhibit 2).   Along with the written appeal, Plaintiff submitted additional evidence in support of his claim, including updated medical records from his treating providers, supportive opinion forms, a functional capacity evaluation, and vocational rehabilitation assessment.   This additional evidence consistently showed that Plaintiff continues to suffer substantial functional limitations and remains unable to find gainful employment in any other occupation as defined by the Plan and relevant policies.   (See Exhibit 2).

18.     In addition to this supplemental evidence, the written appeal also contained written notice of the statutory and common law obligations imposed upon Defendant by the laws of the State of Texas and further explained how Defendant failed to adhere to those numerous obligations.   (See Exhibit 2).   Finally, the written appeal outlined the specific amount of Plaintiff's damages resulting from Defendant's numerous statutory and regulatory violations as well as the specific amount of statutorily imposed prompt payment interest.   (See Exhibit 2).

19.     Despite receiving additional evidence and being put on notice of its statutory violations, Defendant upheld the denial of Plaintiff's benefits by letter dated September 19, 2019 and informed Plaintiff that his claim would remain closed with no further benefits payable.

4

20.     As an entity licensed to offer insurance products in the State of Texas, Defendant is subject to the rules and regulations of the Texas Deceptive Trade Practices- Consumer's Protection Act and the Texas Insurance Code.  Furthermore, Section 541.061 (1)-(5) of the Texas Insurance Code contains a non-exhaustive list of acts or practices that qualify as "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy.

21.     Under Section 541.061(1), it is an unfair and deceptive act or practice to make an untrue statement of material fact.

22.     Under Section 541.061(2), it is an unfair and deceptive act or practice to fail to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made

23.     Under Section 541.061(3), it is an unfair and deceptive act or practice to make a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

24.     As an entity licensed to offer insurance products in the State of Texas, Defendant also has a common law duty of good faith and fair dealing that includes a duty to investigate claims thoroughly and in good faith and the duty to pay benefits when its liability is reasonably clear.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

5

25.     Plaintiff has suffered and continues to suffer from a disability as defined in the Policy and/or as defined under Texas state law. At all material times, Plaintiff has complied with all Policy provisions and conditions precedent to qualify for benefits prior to filing suit.

26.     Defendant, under the terms of the contract of insurance, is indebted to Plaintiff for disability benefits due under the terms of the Policy.

27.     Defendant has failed and refused to honor its common law and contractual obligations under the policy of insurance that was issued to Plaintiff's employer for the benefit of Plaintiff.

28.     Defendant has breached its contract with Plaintiff to provide all disability benefits due to him, including but not limited to disability benefits.  Defendant has also breached its contract by failing to timely pay disability benefits owed to Plaintiff, by incentivizing its employees to deny claims such as Plaintiff's and by further engaging in actions which resulted in the lack of a fair, thorough and objective review.

29.     As a direct and proximate result of Defendant's breach, Plaintiff has been damaged and entitled to damages from Defendant in an amount equal to the amount of benefits due under the policy between July 30, 2018, to the present date.

**SECOND CAUSE OF ACTION**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

30.     Insurers have an affirmative common law duty of good faith and fair dealing. That means that in the handling and adjustment of a claim, the insurer is obligated to act in good faith and deal fairly with the policyholder in delivering on the promise of the policy.  Dearborn

6

National was obligated to meet this common law obligation once a claim on the Policy was made.

31.     The guiding principles of proper claims handling ensure the insurer meets this obligation.  Claims handling personnel must be adequately trained on these principles.  These principles include an obligation to promptly acknowledge the claim, timely investigate the claim, and adjust that claim in a fair, objective, and non-biased manner.

32.     Timely adjustment and investigation means seeking information and evidence to answer questions raised that may clarify the insurer's obligation to pay or deny the claim. Traditional claims handling principles also include a responsibility to find coverage, err in favor of the insured, resolve ambiguities and doubt in favor of the insured, and pay the claim if it meets the policy requirements for payment.

33.     An objective and thorough investigation includes inquiry into reasons to pay a claim, along with any reasons to deny the claim.  The insurer must look at the positive and negative before making its claim decision.  Claims decisions must be based on facts, not guesses or speculation.  Artificial obstacles to payment, unreasonable interpretation of policy terms, speculation, outcome-oriented investigations, and bias should play no role in delivery on its promise.  In following these principles, the insurer is positioned to deliver on the promise of the policy.  It is also positioned to meet its obligation of good faith and fair dealing.

34.     Dearborn National and its claims personnel failed to follow these claim handling principles and instead targeted Plaintiff's claim for denial and evaluated his claim with the purpose of terminating his benefits.  Instead of acting as a reasonable insurance carrier would, Defendant acted solely for it its own financial interest when denying Plaintiff's claim by

7

focusing on the impact the denial would have on its own financial bottom line, rather than the merit of the claim.

35.     Dearborn National further ignored its responsibility to resolve doubts in favor of the insured and resolve ambiguities in favor of insured by refusing to credit the supportive opinion and objective evidence submitted by Mr. Long's treating providers and instead favored the non-supportive opinions of its own physicians without reservation. By blindly following the non-supportive opinions of its own reviewers, Dearborn National failed to objectively and fairly investigate and evaluate Plaintiff's claim.

36.     All of the above conduct constitutes a breach of its common law duty of good faith and fair dealing.  Dearborn National had a duty to fairly, objectively, and thoroughly investigate, evaluate, and adjust Mr. Long's claim. In this instance, its denial was made without any reasonable basis. At all material times, Dearborn National's liability was reasonably clear.

37.     Plaintiff suffered actual and consequential damages as a result of Defendant's bad faith denial of his claim.

38.     Defendant's bad faith denial of Plaintiff's claim was morally culpable to a degree that justifies the imposition of punitive damages.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF TEXAS INSURANCE CODE

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

39.     Texas Insurance Code prohibits, among other things, certain activity by an insurer in the handling and adjustment of claims for policy benefits. Its focus is on the insurers' claims handling conduct. Dearborn National, in its handling and adjustment of Steven Long's claim, has engaged in just such prohibited unfair insurance claims practices in violation of Chapters 541

8

and 542 of the Texas Insurance Code. These unfair practices have also been committed knowingly. Dearborn National has committed, inter alia, the following unfair claims settlement practices:

    a. Refusing to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear, in violation of Section 541.060(a)(2)(A) (formerly Art.21.21§4(10)(ii));

    b. Failing to promptly provide Steven Long with a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of his claim in violation of Texas Insurance Code Section 541.060(a)(3) (formerly Art.21.21 §4(10)(iv));

    c. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim, in violation of Texas Insurance Code Section 541.060(a)(7) (formerly Art.21.21 §4(10)(vii));

    d. Knowingly misrepresenting to Mr. Long pertinent facts or policy provisions relating to coverage at issue in violation of Texas Insurance Code Section 541.061(1) (formerly Art. 21.21 §4(11)(a));

    e. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, and failing to state those material facts necessary to make other statements made not misleading, considering the circumstances under which the statements were made in violation of Texas Insurance Code Section 541.061(3) (formerly Art. 21.21 §4(11)(b));

    f. Dearborn National failed to timely request from Mr. Long any additional items, statements or forms that Defendant reasonably believed to be required from Plaintiff in violation of Texas Insurance Code Section 542.055(a)(2)-(3);

    g. Dearborn National failed to notify Plaintiff in writing of the acceptance or rejection of the claim not later than the fifteenth business day after receipt of all items, statements and forms required by Defendant in violation of Texas Insurance Code Section 542.056(a);

    h. Dearborn National delayed payment of Plaintiff's claim in violation of Texas Insurance Code Section 542.058(a); and

    i. Dearborn National engaged in this conduct knowingly with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices in violation of Texas Insurance Code Section 541.002(1) (formerly Art. 21.21 §2(c))

9

40.     These provisions of the Insurance Code are intended to protect insurance consumers from misleading or false statements about the policy or claim or compel the insurer to disclose material facts to avoid misleading the consumer. They are also intended to compel the insurer to promptly resolve claims when liability is reasonably clear. Dearborn National violated these provisions of the Insurance Code.

41.     During the handling of Plaintiff's claim, Defendant based its denial on several mischaracterizations of material facts, including but not limited to, misrepresentations concerning the availability of alternative occupations when Defendant had actually only identified one.

42.     The availability of specific gainful occupations as defined by the Plan is a material fact important to determining whether Plaintiff remains entitled to benefits and Defendant's mischaracterization that three distinct occupations existed was not only untrue but misled Plaintiff to believe that he no longer met the definition of disability.

43.     Defendant knew or should have known that failure to tender Plaintiff's disability benefits would have a substantial economic impact on Plaintiff and that he would be forced to incur consequential damages such as, or similar to, the consequential damages sustained by Plaintiff.

44.     Any claim by Dearborn National that it received no information to support the claim is false. Mr. Long provided Dearborn National with all of the information available. Even if Dearborn National actually believed it had no information to support Mr. Long's claim, as a part of its duty to investigate and perform a reasonable investigation, it was obligated to inform its policyholder what specific information it needed to perfect his claim. It failed to do so.

45.     At all material times, Dearborn National's conduct in this regard was intentional. It knowingly engaged in this conduct.  It knew it had no factual basis upon which to deny this claim.  Instead, it intentionally chose to ignore the well-support objective and opinion medical evidence submitted by Mr. Long and his treating physicians in favor of its own file-reviewing physicians.

46.     All of this conduct, along with Dearborn National's other acts and omissions, was in violation of Texas Insurance Code §§541.001, et seq., 542.001, et seq., including the Insurance Code's provision for the prompt payment of claims, §542.051, et seq.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF DTPA

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

47.     Texas' Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper or illegal practices. Defendant's violations of the Texas Insurance Code create a cause of action under the DTPA. Defendant's violations of the Texas Insurance Code, as set forth above, specifically violate the DTPA as well.

48.     The violations by Defendant are also "unconscionable" as that term is legally defined, and subjects Defendant to liability for such "unconscionable" acts as set forth by,

11

## FIFTH CAUSE OF ACTION
## FRAUD

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated herein and further states that:

49.    Defendant acted fraudulently and with malice (as that term is legally defined) in denying Plaintiff's claim for disability benefits. Further, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.

50.    Defendant acted fraudulently as to each representation made to Plaintiff concerning material facts for the reason it would not have acted and which Defendant knew were false or made recklessly without any knowledge of their truth. The representations were made with the intention that they be acted upon by Plaintiff, who relied on those representations, thereby causing injury and damage to Plaintiff.

## RESULTING LEGAL DAMAGES

51.    The acts, omission, and practices of Dearborn National constituting a tort were the proximate cause of the damages sustained by Plaintiff. All of Dearborn National's acts and practices in violation of the various statutes herein recited were the producing cause of the actual damages suffered by Mr. Long, including, but not limited to the consequential damages to Plaintiff's economic welfare from the wrongful denial and delay of benefits; lost credit reputation; damages for mental anguish and emotional distress, as well as actual damages under the contract of insurance. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury

12

52.     Plaintiff is entitled to imposition of 18% statutory interest penalty on the amount of the claim along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

53.     Defendant's knowing violations of the Texas Insurance Code and DTPA entitle Plaintiff to the attorneys' fees, treble damages, and other penalties provided by law.

54.     Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

55.     Further, as specified above, the actions of Dearborn National in the handling of Plaintiff's claim were done knowingly and intentionally or with a conscious or callous disregard for the rights and welfare of Plaintiff.  As such, its actions reflected gross negligence and were so outrageous as to warrant the imposition of punitive or exemplary damages, for which Mr. Long further sues for recovery. Plaintiff seeks such punitive or exemplary damages as may be assessed by the jury in its discretion.

56.     Plaintiff is also entitled to the recovery of attorneys' fees pursuant to Texas Civil Practice & Remedies Code Section 38.001, Texas Insurance Code Section 542.060(a)-(b), Texas Business & Commerce Code Section 17.50, Texas Civil Practice & Remedies Code Section 37.009, and any other applicable state law.

## GENERAL CLAIMS

57.     All notices required to be given have been given, and all conditions precedent have been satisfied.

58.     Plaintiff request prejudgment interest, interest required by the Policy, together with interest at 18% per annum as allowed by statute.

## DEMAND FOR JURY TRIAL

13

59.     Plaintiff demands a jury trial.

## REQUEST FOR DISCLOSURE

60.     Plaintiff requests that Dearborn National disclose, within 50 days of service of this request, the information and material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure. Copies of documents and other tangible items responsive to this request must be served on Plaintiff with Dearborn National's Response. Tex. R. Civ. P. 194.4.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Steven Long respectfully requests that he have judgment against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

BY:  *s/ Hudson T. Ellis**
Hudson T. Ellis (#028330)
414 McCallie Avenue
Chattanooga, Tennessee 37402
(423) 634-2506
(423) 634-2505 (fax)
ellish@buchanandisability.com

*Pro hac vice application to be submitted

*s/ Amar Raval*
Amar Raval, TBA #24046682
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF

14

# Exhibit

# 1



# Voluntary Group Long-Term Disability Insurance

*Employee Benefit Booklet*



---

**The University of Texas System**

**Group Number:  GFZ71778-0001**

**Class  1-01**

---

Products and services marketed under the Dearborn National® brand and the star logo are underwritten and/or provided by Dearborn National® Life Insurance Company  (Downers Grove, IL) in all states (excluding New York), the District of Columbia, the United States Virgin Islands, the British Virgin Islands, Guam and Puerto Rico.

EB/98/2013-CF-001879B

# Dearborn National® Life Insurance Company

**Group Certificate**

Dearborn National® Life Insurance Company

Chicago, Illinois

Administrative Office: 1020 31st Street • Downers Grove, IL 60515-5591

Having issued Group *Policy* No.  **GFZ71778-0001**

(herein called the *Policy* or this Plan)

to

**The University of Texas System**

(herein called the *Policyholder*)

CERTIFIES that *You* are insured, provided that *You* qualify under the ELIGIBILITY AND EFFECTIVE DATES provision, become insured and remain insured in accordance with the terms of the *Policy*. *Your* insurance is subject to all the definitions, limitations and conditions of the *Policy*. It takes effect on the effective date stated in the ELIGIBILITY AND EFFECTIVE DATES provision.

This certificate describes *Your* eligibility for benefits and the terms and provisions of the *Policy*. It replaces and cancels any other certificate previously issued to *You* under the *Policy*.

If the terms and provisions of the Certificate of Coverage (issued to *You*) are different from the *Policy* (issued to the *Policyholder*), the *Policy* will govern. *Your* coverage may be canceled or changed in whole or in part under the terms and provisions of the *Policy*.

## READ YOUR CERTIFICATE CAREFULLY

Signed for Dearborn National® Life Insurance Company

|  |  |
|---|---|
| Secretary | President |

**THE INSURANCE *POLICY* UNDER WHICH THIS CERTIFICATE IS ISSUED IS NOT A *POLICY* OF WORKERS' COMPENSATION INSURANCE. YOU SHOULD CONSULT YOUR EMPLOYER TO DETERMINE WHETHER YOUR EMPLOYER IS A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM.**

## Group Voluntary Long-Term Disability Certificate

Participating

EBA-LONG-CF-001880B

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Dearborn National® Life Insurance Company's toll-free telephone number for information or to make a complaint at

**1-800-348-4512**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

**1-800-252-3439**

You may write the Texas Department of Insurance

P. O. Box 149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Web: http://www.tdi.texas.gov/
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Dearborn National® Life Insurance Company para informacion o para someter una queja al

**1-800-348-4512**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas

P. O. Box 149104
Austin, TX 78714-9104
FAX: (512) 490-1007
Web: http://www.tdi.texas.gov/
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con al Departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

EBA-LONG-CF-001881B

9-632-715 TX

## TABLE OF CONTENTS

**PROVISION**     **PAGE**

*SCHEDULE OF BENEFITS* ...... *3*

*ELIGIBILITY AND EFFECTIVE DATES* ...... *5*

*LONG-TERM DISABILITY BENEFITS* ...... *9*

*EXCLUSIONS AND LIMITATIONS* ...... *13*

*TERMINATION OF COVERAGE* ...... *14*

*SUPPLEMENTAL BENEFITS AND SERVICES* ...... *16*

    *SURVIVOR INCOME BENEFIT* ...... *16*

    *ACCIDENTAL DISMEMBERMENT BENEFIT* ...... *16*

    *CATASTROPHIC DISABILITY BENEFIT* ...... *17*

    *CAREGIVER RESPITE BENEFIT* ...... *18*

    *CAREGIVER TRAINING BENEFIT* ...... *19*

    *EMERGENCY ALERT SYSTEM BENEFIT* ...... *19*

    *WORKSITE MODIFICATION BENEFIT* ...... *20*

    *CONVERSION PRIVILEGE* ...... *20*

*CLAIM SERVICES* ...... *21*

*FILING A CLAIM* ...... *21*

*UNIFORM PROVISIONS* ...... *24*

*DEFINITIONS* ...... *26*

Note:  All terms in *Italics* are listed and defined in the Definitions section or within the certificate itself.

## SCHEDULE OF BENEFITS

| | |
|---|---|
| Policyholder: | The University of Texas System |
| Policy Number: | GFZ71778-0001 |
| Effective Date: | September 1, 2015 |
| Annual Enrollment Period: | July 15 – July 31 |
| Eligibility: | The following are eligible: All active benefit eligible *Employees* who are *Actively at Work* for the *Policyholder* who are expected to work at least 20 hours per week and to continue in the employment for a term of at least 4½ months or appointed for at least 50% of a standard full-time appointment excluding those individuals who are covered under another group disability program provided by the Medical Practice Plan (MSRDP/PRS) Benefits. |
| Waiting Period: | If *You* are in a class eligible for insurance:  The date of hire or the first day of the month following the date of hire, whichever *You* elect when *You* enroll. |
| Elimination Period: | 90 Days |
| Elimination Period for Catastrophic Disability Benefit: | 90 Days |
| LTD Monthly Benefit: | 60% of *Monthly Earnings* to a *Maximum Gross Monthly Benefit* of $12,025.00 per month subject to reduction by deductible sources of income or *Disability Earnings* |
| Social Security Offset Method: | Family Social Security |
| Policyholder Contribution: | 0% of premium |

| Maximum Period Payable: | Age on Date of Disability | Maximum Period Payable |
|---|---|---|
| | Less than 60 | To age 65, but not less than 60 months |
| | 60 – 64 | 60 months |
| | 65 – 69 | To age 70, but not less than 12 months |
| | 70 and over | 12 months |

| Maximum Period Payable for Catastrophic Disability Benefit: | Age on Date of Disability | Maximum Period Payable |
|---|---|---|
| | Less than 60 | To age 65, but not less than 60 months |
| | 60 – 64 | 60 months |
| | 65 – 69 | To age 70, but not less than 12 months |
| | 70 and over | 12 months |

## OTHER FEATURES

The following other features are included:

- Waiver of Premium
- Work Incentive Benefit
- Recurrent Disability
- FMLA Coverage Extension
- Conversion Privilege
- Survivor Benefit
- Worksite Modification Benefit
- Vocational Rehabilitation Service
- Social Security Assistance
- Catastrophic Disability Benefit
    - Caregiver Respite Benefit
    - Caregiver Training Benefit
    - Emergency Alert System Benefit
- Accidental Dismemberment Benefit
- Continuity of Coverage

**THIS SCHEDULE OF BENEFITS CANCELS AND REPLACES ALL OTHER SCHEDULES PREVIOUSLY ISSUED TO *YOU* UNDER THE *POLICY*. IT OUTLINES THE *POLICY* FEATURES. THE FOLLOWING PAGES PROVIDE A COMPLETE DESCRIPTION OF THE PROVISIONS OF *YOUR* CERTIFICATE.**

## ELIGIBILITY AND EFFECTIVE DATES

***Who is eligible for this insurance?***

The following people are eligible: All active benefit eligible *Employee*s who are *Actively at Work* for the *Policyholder* who are expected to work at least 20 hours per week and to continue in the employment for a term of at least 4½ months or appointed for at least 50% of a standard full-time appointment excluding those individuals who are covered under another group disability program provided by the Medical Practice Plan (MSRDP/PRS) Benefits.

The *Waiting Period* is shown in the *Schedule of Benefits.*
00001 UTS

***When does Your Contributory insurance become effective?***

*Your Contributory* coverage will become effective on the latest of the following dates, provided *You* are *Actively at Work* on that date:

1. If there is no *Waiting Period*, the date you are eligible for coverage, if *You* enroll for coverage on or before that date;

2. If *You* sign the *Enrollment Form* after the end of the *Waiting Period*, but within 31 days after that day, *Your* coverage will become effective on the first of the month that falls on or next follows the date *You* sign the *Enrollment Form.*

3. If *You* do not sign the *Enrollment Form* within this 31-day period, *You* will be considered a late entrant and must wait until the next *Annual Enrollment* to apply for coverage and must furnish *Evidence of Insurability* satisfactory to *Us* before coverage can become effective, unless *You* qualify because of a *Change in Family Status.*
   a. Initial requests for coverage or requests for changes to existing coverage made during the *Annual Enrollment* period will become effective on the *Policy* anniversary date or the date *We* determine that the *Evidence of Insurability* is satisfactory and *We* provide written notice of approval, whichever is later.
   b. Coverage because of a *Change in Family Status* will become effective on the date *You* sign the *Enrollment Form.*

*You* must be *Actively at Work* for coverage under the *Policy* to become effective. If, because of *Injury* or *Sickness*, *You* are not *Actively at Work* on the date the insurance would otherwise take effect, it will take effect on the day *You* return to *Active Work.*

**Contributory** means *You* pay all or a portion of the premium for this insurance coverage.

**Enrollment Form** means the *Application You* complete to apply for coverage under the *Policy.*
00003 UTS

***Change in Family Status***

If *You* experience a qualified *Change in Family Status*, *You* may enroll for *Contributory* coverage, apply for additional coverage, or request changes to *Your* current *Contributory* benefit program(s) without providing *Evidence of Insurability*. *You* must submit the appropriate *Enrollment Form* within 31 days of the *Change in Family Status.*
00004 UTS

***Change in Family Status*** means changes in the status of *Your* family, including but not limited to:
1. *You* get married;
2. *You* have a dependent child, or *You* adopt or become the legal guardian of a dependent child;
3. *Your Spouse* dies or *You* become divorced;
4. *Your* dependent child becomes emancipated or dies;
5. *Your Spouse* is no longer employed, resulting in a loss of group insurance, or;

6. *You* have a change in classification which results in *You* changing from part-time to full-time, or full-time to part-time.
7. *You* return to work after a leave of absence.
00004-A

### What happens if *You* take a leave of absence?

*You* have two options if *You* take a leave of absence:

1. *You* may continue *Your* coverage for the period of the leave of absence provided *Your* premium is paid; or

2. *You* may terminate *Your* coverage effective the date *Your* leave of absence begins.

If *You* continue *Your* coverage and return to work on the first work day following the end of *Your* leave of absence, *Your* coverage will continue.

If *You* do not return to work on the first work day following the date *Your* leave of absence ends, *Your* coverage will terminate on the date *Your* leave of absence ended.

If *You* terminate *Your* coverage when *Your* leave of absence begins or before the end of the approved leave of absence period, *You* must re-enroll when *You* return to work after a leave of absence. *Evidence of Insurability* is required if *You* do not re-enroll within 31 days of returning to work after a leave of absence.
00098 UTS

### When is *Evidence of Insurability* required?

*Evidence of Insurability* is required if:

1. *You* are a late entrant, which means *You* enroll for insurance more than 31 days after the date *You* are eligible for insurance; or

2. *You* voluntarily canceled *Your* insurance and are reapplying.

You may obtain an *Evidence of Insurability Form* from *the Policyholder*.
00005

### Changes to *Your* coverage

A change in *Your* coverage may occur if there is a *Policy* change. If *You* are eligible for additional coverage due to a *Policy* change, the additional coverage will be effective on the date the *Policy* change is effective, as requested by the *Policyholder* and agreed upon by *Us*.

In order for *Your* additional coverage to begin, *You* must be in *Actively at Work*. Additional coverage is subject to payment of premium.

Additional coverage includes increases in *Your Monthly Benefit* amount and other benefit provisions that may impact when or for how long benefits are payable. Additional coverage is subject to the *Pre-Existing Condition* Exclusion.

Any decrease in coverage will take effect immediately. If the *Date* of *Disability* was prior to the decrease, any claim resulting from that *Disability* will be paid at the amount in effect at the time the Disability was incurred.
00006

*Evidence* **of Insurability** means a statement of *Your* medical history which *We* will use to determine if *You* are approved for coverage. *Evidence of Insurability* will be provided at *Our* expense.

*Evidence of Insurability Form* means a form provided or approved by Us on which you provide a statement of your medical history.
00007

### What is an Annual Enrollment period?

Unless otherwise specified, *Annual Enrollment Period* means the period of time prior to the *Policy* anniversary date. *Your Annual Enrollment Period* is shown on the *Schedule of Benefits*.

Eligible *Employees* may enroll in the Plan, apply for additional coverage, or request changes to their current Voluntary Benefit program(s) only during the *Annual Enrollment*, unless they qualify because of a *Change in Family Status*. *Employees* hired after an *Annual Enrollment* period may enroll within 31 days following their eligibility date. If a new *Employee* does not elect Voluntary coverage within that time period, he must wait for the next the *Annual Enrollment* to enroll unless they qualify because of a *Change in Family Status*.

Initial requests for coverage or requests for changes to existing coverage made during the *Annual Enrollment* period will become effective on the *Policy* anniversary date or the date *We* determine *Evidence of Insurability* is satisfactory and *We* provide written notice of approval, whichever is later.
00099 UTS

### Who pays for Your coverage?

*You* pay the entire cost of *Your* coverage.
00008

### Do You have to pay premium while You receive benefits?

*We* will waive premium for *You* during a period of *Disability* for which the *LTD Monthly Benefit* is payable under the *Policy*. Premium payment is required during *Your Elimination Period* or any other period when the *LTD Monthly Benefit* is not payable under the *Policy*.
00009

### What happens if We are replacing an existing Policy? (Continuity of Coverage)

### Effect on Actively at Work requirement

If *You* were insured under the *Prior Policy* on the day before the *Policy* Effective Date, *You* may be covered by the *Policy* even if *You* do not satisfy the *Actively at Work* requirement as stated in the *When does insurance become effective?* provision and *You* would otherwise be eligible to become insured under the *Policy*, *We* will provide limited coverage under this Plan. Coverage under this provision will begin on the *Policy* effective date and will continue until the earliest of:

1. The end of the month following the date *You* become *Actively at Work*;

2. The end of any period of continuance or extension provided under the *Prior Policy*; or

3. The date coverage would otherwise end, according to the provisions of the *Policy*.

Your coverage under this provision is subject to payment of premium.

### Effect on Benefits

If *You* do not satisfy the *Actively at Work* requirement, *You* may still be eligible for benefits under the *Policy* as follows:

The benefits payable under the *Policy* will be the benefits which would have been payable under the terms of the *Prior Policy* if it had remained in force; and the benefits payable under the *Policy* will be reduced by any benefits payable under the *Prior Policy* for the same *Disability* for which the prior carrier is liable.

The *Prior Policy* is the group disability insurance *Policy* issued to the *Policyholder* by Hartford Life Insurance Company whose coverage terminated immediately prior to the *Policy* Effective Date.

### Effect on Pre-existing Conditions

If *You* have a *Disability* due to a *Pre-Existing Condition* after the *Prior Policy* has been replaced by this Plan, Benefits may be payable if:

1.  *You* were insured under the *Prior Policy* at the time the *Policyholder* changed coverage from the *Prior Policy* to the *Policy*; and

2.  *You* have been continuously insured under this Plan from the effective date of this Plan until the date *Your Disability* began.

In order for benefits to be paid, *You* must satisfy the *Pre-Existing Condition* exclusion under:

1.  this Plan; or

2.  the *Prior Policy*, if benefits would have been paid had the Prior *Policy* remained in force.

If *You* satisfy the *Pre-Existing Condition* exclusion of this Plan, *We* will determine *Your* payments according to this Plan's provision.

If *You* do not satisfy the *Pre-Existing Condition* exclusion of this Plan, but *You* do satisfy the *Pre-Existing Condition* provision under the *Prior Policy*:

1.  *Your Monthly Benefit* will be the lesser of:

    a.  The *Monthly Benefit* that would have been payable under the terms of the *Prior Policy* if it had remained in force; or

    b.  The *Monthly Benefit* under this Plan.

2.  Benefits will end on the earlier of:

    a.  The date benefits end under the *Policy*, as described under the Maximum Period Payable; or

    b.  The date benefits would have ended under the *Prior Policy* if it had remained in force.

If *You* do not satisfy the *Pre-Existing Condition* exclusion under either this Plan or the *Prior Policy*, *We* will not make any payments.

*We* will require proof that *You* were insured under the *Prior Policy*.
00010


### *Eligibility after You Terminate Employment*

If *Your* coverage ends due to termination of employment, *You* must meet all the requirements of a new *Employee* if *You* are rehired at a later date.

Exception: If *Your* coverage ends due to termination of employment and you return to *Active Work* in an eligible class within 6 months, we will not:

1.  apply a new *Eligibility Waiting Period*;

2.  apply a new *Pre-existing Condition Exclusion;*

3.  require *Evidence of Insurability.*

00100 UTS

## LONG-TERM DISABILITY BENEFITS

*How do We define Total Disability?*

If the institutions are in session, Total Disability or Totally Disabled means that during the first 24 consecutive months of benefit payments due to Sickness or Injury:

1.   You are continuously unable to perform the Material and Substantial Duties of Your Regular Occupation, and

2.   Your Disability Earnings, if any, are less than 20% of Your pre-disability Indexed Monthly Earnings.

After the LTD Monthly Benefit has been paid for 24 consecutive months, Total Disability or Totally Disabled means that due to Injury or Sickness:

1.   You are continuously unable to engage in any Gainful Occupation, and

2.   Your Disability Earnings, if any, are less than 20% of Your pre-disability Indexed Monthly Earnings.

If the institutions are not in session, Total Disability or Totally Disabled means that during the first 24 consecutive months of benefit payments due to Sickness or Injury:

1.   You would be continuously unable to perform the Material and Substantial Duties of Your Regular Occupation, and

2.   Your Disability Earnings, if any, would be less than 20% of Your pre-disability Indexed Monthly Earnings.

After the LTD Monthly Benefit has been paid for 24 consecutive months, Total Disability or Totally Disabled means that due to Injury or Sickness:

1.   You would be continuously unable to engage in any Gainful Occupation, and

2.   Your Disability Earnings, if any, would be less than 20% of Your pre-disability Indexed Monthly Earnings.
00013 UTS

*How do We define Partial Disability?*

If the institutions are in session, Partial Disability or Partially Disabled means that during the *Elimination Period* and Maximum Benefit Period, due to Injury or Sickness, You are working in any Gainful Occupation and you are able to earn Disability Earnings of at least 20% of Your pre-disability Indexed Monthly Earnings  but are unable to earn more than 80% of Your pre-disability Indexed Monthly Earnings.

If the institutions are not in session, Partial Disability or Partially Disabled means that during the *Elimination Period* and Maximum Benefit Period, due to Injury or Sickness, You would be able to earn Disability Earnings of at least 20% of Your pre-disability Indexed Monthly Earnings  but would be unable to earn more  than  80% of Your pre-disability Indexed Monthly Earnings.
00014 UTS

**Loss of Professional License or Certification**

If *You* require a professional license or certification for *Your* occupation, loss of that professional license or certification does not in and of itself constitute *Disability*.
00017

*What is the Elimination Period and how is it satisfied?*

The *Elimination Period* is a period of continuous *Disability* which must be satisfied before *You* are eligible to receive benefits from *Us*.  It is shown in the *Schedule of Benefits* and begins on *Your Date of Disability*.

If *You* temporarily recover and return to work, *We* will treat *Your Disability* as continuous if *You* return to work for a period of less than or equal to one-half the *Elimination Period* rounded up to the next whole number, not to exceed 45 days.  The days that *You* are not *Disabled* will not count toward *Your Elimination Period*.

If *You* return to work for a period greater than one-half the Elimination Period, or 90 days, whichever is less, and become *Disabled* again, *You* will have to begin a new *Elimination Period*.
00018

**Can You satisfy Your Elimination Period if You are working?**

*You* can satisfy *Your Elimination Period* if *You* are working, provided *You* meet the definition of *Disability*.
00019

**What Disability Benefit are You eligible to receive?**

If *You* are *Disabled*, *You* are eligible to receive one of the following at any given time:

1.   an *LTD Monthly Benefit*; or

2.   a Work Incentive Benefit.

While *You* are *Disabled*, *You* might be eligible to receive one or the other of the above, but *You* cannot receive more than one of these benefits at the same time.
00020 UTS

**What is Your LTD Monthly Benefit and how is it calculated?**

*Your LTD Monthly Benefit* will be based on *Your Monthly Earnings* as reported to *Us* by the *Policyholder*.

An *LTD Monthly Benefit* will be payable after the end of the *Elimination Period* if *You* are *Disabled*. *We* will calculate *Your Gross LTD Monthly Benefit* amount as follows:

1.   Multiply *Your Monthly Earnings* by 60%.

2.   The maximum *Gross LTD Monthly Benefit* is $12,025.00.

3.   Compare the answers from Item 1 and Item 2. The lesser of these two amounts is *Your Gross LTD Monthly Benefit*.

4.   *Subtract the Deductible Sources of Income from Your Gross LTD Monthly Benefit*. The resulting figure is *Your Net LTD Monthly Benefit*.

5.   Compare the answer from item 3 and 4.

The lesser amount figured in item 5 is *Your Monthly Benefit*.

If a benefit is payable for less than one month, it will be paid on the basis of 1/30th of the *Net LTD Monthly Benefit* for each day of *Disability*.
00021-B  UTS

**How do We define Monthly Earnings?**

*Monthly Earnings* will equal the greater of:

1.   1/12th of *Your* last reported gross annual income from *Your Employer* in effect on the day immediately prior to *Your Date of Disability*; or

2.   1/12th of *Your* gross annual income from *Your Employer* in effect on the September 1 immediately prior to *Your Date of Disability*.

It includes:
1.   hazardous duty pay;
2.   longevity pay;
3.   *Employee* contributions made through a salary reduction agreement with *Your* Employer to an IRC Section 401(k), 403(b), 501(c)(3), 457 deferred compensation plan, or any other qualified or non-qualified *Employee* Retirement Plan or deferred compensation arrangement; and
4.   amounts contributed to *Your* fringe benefits according to a salary reduction arrangement under an IRC Section 125 plan.

It does not include:
1. commissions;
2. bonuses;
3. overtime pay; or
4. *Your* Employer's contribution on *Your* behalf to a Retirement Plan or deferred compensation arrangement; or
5. any other extra compensation.
00022 UTS

### What are the Deductible Sources of Income?

1. *Disability* benefits paid, payable, or for which *You* are eligible under:

   a. The Social Security Act, including any amounts for which *Your* dependents may qualify because of *Your Disability*;

   b. Any Workers' Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational Injury or Sickness;

   c. Occupational accident coverage provided by or through the *Policyholder*;

   d. Any Statutory Disability Benefit Law;

   e. The Railroad Retirement Act;

   f. The Canada Pension Plan, Quebec Pension Plan, or any other similar disability or pension plan or act;

   g. The Canada Old Age Security Act;

   h. Any Public *Employee* Retirement System Plan, or any State Teachers' Retirement System Plan, or any plan provided as an alternative to any of the above acts or plans;

   i. Title 46, United States Code Section 688 et seq (The Jones Act);

   j. Title 33, United States Code Section 901 et seq (Longshore and Harbor Workers' Compensation Act).

2. *Disability* benefits paid, payable, or for which You are eligible under:

   a. Any group insurance plan provided by or through the *Policyholder*, and

   b. Any sick leave or salary continuance plan provided by or through the *Policyholder*.

3. Retirement benefits paid under the Social Security Act including any amounts for which *Your* dependents may qualify because of *Your* retirement;

4. Retirement and *Disability* benefits paid under a Retirement Plan provided by the *Policyholder* except for amounts attributable to *Your* contributions;

5. *Disability* benefits paid under any No Fault Auto Motor Vehicle coverage;

6. Amounts received from a third party after subtracting attorney's fees by judgment, settlement or otherwise, not to exceed 50% of the net settlement.

### Proration of Lump Sum Awards

If any Deductible Source of Income described above is paid in a single sum through compromise settlement or as an advance on future liability, *We* will determine the amount of reduction to *Your Gross LTD Monthly Benefit* as follows:

1. *We* will divide the amount paid by the number of months for which the settlement or advance was provided; or

2. If the number of months for which the settlement or advance is made is not known, *We* will divide the amount of the settlement or advance by the expected remaining number of months for which *We* will provide benefits for *Your Disability* based on the Proof of *Disability* which *We* have, subject to a maximum of 60 months.

***What other sources of income are not deductible?***

*We* will not reduce *Your Gross LTD Monthly Benefit* by any of the following:

1. deferred compensation arrangements such as 401(k), 403(b) or 457 plans;

2. credit disability insurance;

3. pension plans for partners;

4. military pension and disability income plans;

5. franchise disability income plans;

6. individual disability income plans;

7. a *Retirement Plan* from another *Policyholder*;

8. profit sharing plans;

9. thrift or savings plans;

10. individual retirement account (IRA);

11. tax sheltered annuity (TSA);

12. stock ownership plan;

13. vacation pay.

00023 UTS

***Can You work and still receive benefits?***

While *Disabled, You* may qualify for the Work Incentive Benefit.

**Work Incentive Benefit**

A Work Incentive Benefit will be payable if *You* are *Disabled* and *Gainfully Employed* after the end of the *Elimination Period,* or after a period during which *You* received *LTD Monthly Benefits*.

The Work Incentive Benefit will be calculated during the first 24 months of disability payments while *You* are *Gainfully Employed* as follows:

1. We will add together the gross *Monthly Benefit* and *Disability Earnings* and compare to pre-disability *Monthly Earnings*.

2. If the total amount in Item 1 exceeds 100% of pre-disability *Monthly Earnings*, the Work Incentive Benefit will be equal to the *Net LTD Monthly Benefit* reduced by the amount of the excess.

3. If the total amount in Item 1 does not exceed 100% of pre-disability *Monthly Earnings*, the Work Incentive Benefit will be equal to the *Net LTD Monthly Benefit* amount.

After the first 24 months of disability payments while *You* are *Disabled* and *Gainfully Employed*, the Work Incentive Benefit will be equal to the *Net Monthly Benefit* multiplied by the *Adjusted Loss of Salary Ratio*.

The Work Incentive Benefit will cease on the earliest of the following:

1. the date *You* are no longer *Disabled;* or

2. the end of the *Maximum Period Payable.*

Adjusted Loss of Salary Ratio is equal to: A divided by B

A= *Your pre-disability Monthly Earnings* minus *Your Disability Earnings*

B= *Your pre-disability Monthly Earnings*

00024-A

*What is the minimum Net LTD Monthly Benefit payable under the Policy?*

In no event will the *Monthly Benefit* payable for *Disability* be reduced to less than:

Tier I - $100 while *Your Monthly Benefit* is reduced by any disability benefits paid under any sick leave or salary continuation plan provide by or through *Your* Employer; or

Tier II - $100 or 10% of *Your Monthly Benefit*, prior to any reductions, whichever is greater, after any disability benefits paid under any sick leave or salary continuation plan have been exhausted.

The minimum *Net LTD Monthly Benefit* does not apply if *You* are *Gainfully Employed*.
00025 UTS

*What happens if Your Deductible Sources of Income increase?*

The *Net LTD Monthly Benefit* will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which *You* or *Your* dependents are eligible under any Deductible Source of Income shown above.
00026

*How long will You receive benefits under the Policy?*

*We* will send *You* a payment for each month of *Disability* up to the *Maximum Period Payable* as shown in the *Schedule of Benefits*.  Payment of benefits is also subject to any benefit duration limitation pertaining to *Your Disability*.
00027

*What happens if Your Disability recurs?*

If *Disability* for which benefits were payable ends but recurs due to the same or related causes less than 6 months after the end of a prior *Disability*, it will be considered a resumption of the prior *Disability*.  Such recurrent *Disability* shall be subject to the provisions of the *Policy* that were in effect at the time the prior *Disability* began.

*Disability* which recurs more than 6 months after the end of a prior *Disability* is subject to:

1.   a new *Elimination Period*;

2.   a new *Maximum Period Payable*; and

3.   the other provisions of the *Policy* that are in effect on the date the *Disability* recurs.

*Disability* must recur while *Your* coverage is in force under the *Policy*.
00028

---

## EXCLUSIONS AND LIMITATIONS

---

*What are the exclusions and limitations under the Policy?*

The *Policy* does not cover any loss or *Disability* caused by, resulting from, arising out of or substantially contributed, directly or indirectly, to any one or more of the following:

* *a Pre-Existing Condition*;

* commission of, participation in, or an attempt to commit an assault or felony;

* Intentionally self-inflicted injuries;

* attempted suicide, regardless of mental capacity;

* participation in a war, declared or undeclared, or any act of war;

* active *Participation in a Riot*;

The *Policy* has limitations on:

- *Mental Disorder - Disability* beyond 24 months after the *Elimination Period* if it is due to a *Mental Disorder* of any type.  Confinement in a *Hospital* or institution licensed to provide care and treatment for mental illness will not be counted as part of the 24-month limit.

- *Substance Abuse* – A *Substance Abuse* (drug or alcohol) related *Disability* unless *You* are participating in a *Substance Abuse* treatment program approved by the State where the treatment program is provided.  The cost of the treatment program must be borne by *You* or another group plan of the *Policyholder* (such as a group health plan or *Employee* Assistance Program) if one is available and covers this type of treatment.

Except as specifically stated above, in no event will *LTD Monthly Benefits* for a *Mental Disorder* or *Substance Abuse* be paid beyond the earliest of the date:

1. 24 *LTD Monthly Benefit* payments have been made; or

2. the *Maximum Period Payable* is reached; or

3. *You* refuse to participate in an appropriate, available treatment program, or *You* leave the treatment program prior to completion; or

4. *You* are no longer following the requirements of *Your* treatment plan under the program; or

5. *You* complete the initial treatment plan, exclusive of any aftercare or follow-up services.

The lifetime cumulative *Maximum Period Payable* for all disabilities due to a *Mental Disorder* and *Substance Abuse* is 24 months.  Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:

1. are not continuous; and/or

2. are not related.

Furthermore:

- Benefits are not payable for any period during which *You* are confined to a penal or correctional institution if the period of confinement exceeds 30 days.

00029

## TERMINATION OF COVERAGE

### When will *Your* insurance terminate?

*Your* coverage will terminate on the earliest of the following dates:

1. the date on which the *Policy* is terminated;

2. the date at the end of the period for which premium has been paid if the Employer fails to pay the required premium for *You* within 31 days after the premium due date, except for an inadvertent error; or

3. the date on which the Employer's participation under the *Policy* is terminated; or

4. the date *You*:

   a. are no longer a member of a class eligible for this insurance,

   b. request termination of coverage under the *Policy*,

   c. are retired or pensioned, or

   d. cease work because of a leave of absence (see Extension of Coverage below), furlough, layoff, or temporary work stoppage due to a labor dispute, unless *We* and the *Policyholder* have agreed in writing in advance of the leave to continue insurance during such period.  Orders to active military service for 2 months or less will be covered subject to continued payment of premium.

Termination will not affect a covered loss which began while the coverage was in force.
00030 UTS

### *Extension of Coverage*

Subject to payment of the required premium when due, *Your* coverage under the *Policy* will be extended until the end of the period shown for each of the following reasons:

1.   leave of absence, agreed to in writing by *Your* Employer: 24 months

2.   sabbatical leave, agreed to in writing by *Your* Employer: 24 months
00101 UTS

### *Will coverage be continued if You are eligible for leave under FMLA?*

In the event *You* are eligible for and the *Policyholder* approves a leave under the Family and Medical Leave Act of 1993 (FMLA), or any applicable state family and medical leave law (State FML), provided the required premium continues to be paid, *Your* insurance will continue for a period of up to the later of:

1.   the leave period permitted by the federal Family and Medical Leave Act of 1993 and any amendments; or

2.   the leave period permitted by applicable state law.

While granted a Family or Medical Leave of Absence:

1.   The *Policyholder* must remit the required premium according to the terms of the *Policy*; and

2.   coverage will terminate if *You* do not return to work as scheduled according to the terms of *Your* agreement with the *Policyholder*.
00031

### *Will coverage be continued if You are eligible for leave under USERRA?*

If *You* are on a leave of absence for active military service as described under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) and applicable state law, *Your* coverage may be continued until the end of the later of:

1.   the length of time the coverage may be continued under the Certificate for an FMLA or State FML leave of absence; or

2.   the length of time the coverage may be continued under the Certificate of Coverage for a leave of absence other than an FMLA or State FML leave of absence.
00032

### *Will coverage be continued for other leaves of absence?*

If the *Policyholder* has approved more than one type of leave of absence for *You* during any one period that *You* are not *Actively at Work We* will consider such leaves to be concurrent for the purpose of determining how long *Your* coverage may continue under the *Policy*.

If *Your* coverage is not continued during an FMLA or State FML leave of absence, and *You* become *Actively at Work* immediately following the end of *Your* FMLA or State FML leave of absence, *Your* coverage will be reinstated.  *We* will not apply a new *Waiting Period*, require *Evidence Of Insurability*, or apply a new *Pre-existing Condition* limitation.

If *Your* coverage is not continued during a leave of absence for active military service, and *You* return to active employment, *Your* coverage may be reinstated in accordance with USERRA and applicable state law.

In no event will *Your* coverage under the *Policy* be continued beyond the date *Your* coverage would otherwise end according to the terms of the *When will Your insurance terminate?* provision.
00033 UTS

## SUPPLEMENTAL BENEFITS AND SERVICES

## SURVIVOR INCOME BENEFIT

***What happens if You die while receiving benefits?***

We will pay a Survivor Income Benefit to an *Eligible Survivor* when proof is received that *You* died:

1.  After the Disability had continued for 12 or more consecutive months; and

2.  While receiving an *LTD Monthly Benefit*

The Survivor Income Benefit shall be payable on a lump sum basis immediately after *We* receive written proof of *Your* death.  The benefit will be equal to 6 times *Your Last Monthly Benefit*.  The benefit shall accrue from *Your* date of death.

***Eligible Survivor*** means *Your Spouse*, if living, or if *Your Spouse* dies before the final monthly benefit is paid, then *Your* children who are under age 23.

If payment becomes due to *Your* children, payment will be made to:

1.  the children; or

2.  a person named by *Us* to receive payments on the children's behalf.  This payment will be valid and effective against all claims by others representing or claiming to represent the children.

***Last Monthly Benefit*** means the *Monthly Benefit* paid to *You* immediately prior to *Your* death.

If there is no *Eligible Survivor*, *We* will pay the Survivor Income Benefit to your estate.
00036

## ACCIDENTAL DISMEMBERMENT BENEFIT

***What is the Accidental Dismemberment Benefit?***

If, while insured under the *Policy*, *You* suffer an Injury in an *Accident*, *We* will pay an Accidental Dismemberment Benefit for the Specific Losses listed below.  The Accidental Dismemberment Benefit is equal to the *Net LTD Monthly Benefit* and is payable for the length of time stated below, or until *Your* date of death, whichever first occurs.  This benefit is paid in lieu of the LTD Monthly Benefit or the Work Incentive Benefit.  The loss must:

1.  Occur within 365 days of the *Accident*; and

2.  Be the direct and sole result of the *Accident*; and

3.  Be independent of all other causes.

| Specific Loss | Months Payable |
|---|---|
| Quadriplegia | 60 months |
| Paraplegia | 55 months |
| Hemiplegia | 50 months |
| Loss of both hands | 46 months |
| Loss of both feet | 46 months |
| Loss of the entire sight of both eyes | 46 months |
| Loss of one hand and one foot | 46 months |
| Loss of one hand and the entire sight of one eye | 46 months |
| Loss of one foot and the entire sight of one eye | 46 months |
| Loss of one hand | 23 months |
| Loss of one foot | 23 months |
| Loss of the entire sight of one eye | 15 months |
| Loss of the thumb and index finger of either hand | 12 months |

After payment of the Accidental Dismemberment Benefit, benefits may continue subject to the other provisions of the *Policy*. If more than one loss results from any one *Injury*, *We* will pay only for that loss with the greatest number of months payable.

*Specific Loss* means, with respect to hand or foot, the actual, complete and permanent severance through or above the wrist or ankle joint; with respect to eye, the irrecoverable loss of the entire sight thereof; and with respect to thumb and index finger, the actual, complete and permanent severance through or above the metacarpophalangeal joints.

*Quadriplegia* means complete paralysis of both arms and both legs as a result of an *Injury* to the Spinal Cord. The paralysis must be determined by a *Doctor* to be permanent, complete and irreversible.

*Paraplegia* means complete paralysis of either both arms or both legs as a result of an *Injury* to the Spinal Cord. The paralysis must be determined by a *Doctor* to be permanent, complete and irreversible.

*Hemiplegia* means the complete paralysis of one arm and one leg on the same side of the body as a result of an *Injury* to the Spinal Cord. The paralysis must be determined by a *Doctor* to be permanent, complete and irreversible.

*We* may require proof of total paralysis on a periodic basis.
00041

## CATASTROPHIC DISABILITY BENEFIT

*What is a Catastrophic Disability Benefit?*

*We* will pay a monthly Catastrophic Disability Benefit to *You* if *You* are receiving *LTD Monthly Benefits* (or Accidental Dismemberment Benefits) and *We* receive proof that *You* are *Catastrophically Disabled*. Catastrophic Disability Benefit payments will begin at the end of the Catastrophic Disability *Elimination Period* shown in the *Schedule of Benefits*.

*You* are *Catastrophically Disabled* when *We* determine that, due to *Sickness* or *Injury*:

1. *You* are unable to perform, without human assistance or regular supervision from another person, at least 2 of the 6 *Activities of Daily Living*; or

2. *You* become *Cognitively Impaired*; and

3.  *You* are not *Gainfully Employed*.

#### When will Your coverage become effective?

*You* will become insured for Catastrophic Disability Benefit coverage on *Your* effective date under the *LTD* plan.

However, the Catastrophic Disability Benefit coverage will be delayed if, on *Your* effective date, *You* cannot safely and completely perform one or more of the *Activities of Daily Living* without another person's assistance, or verbal cueing, or *You* are *Cognitively Impaired*.  Coverage will begin on the date *You* can safely and completely perform all of the *Activities of Daily Living* without another person's assistance or verbal cueing, or no longer are *Cognitively Impaired*.

There is no conversion privilege for the Catastrophic Disability benefit.

#### How much will We pay if You are Disabled?

The Catastrophic Disability Benefit is 10% of pre-disability *Monthly Earnings* to a maximum Catastrophic Disability Benefit of the lesser of the maximum *LTD Monthly Benefit* or $5,000.00.

This benefit is not subject to *Policy* provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income.

#### When will Your Catastrophic Disability Benefit payments end?

*Catastrophic Disability* Benefit payments will end on the earliest of the following dates:

1.  the date *You* are no longer *Catastrophically Disabled*;
2.  the date *You* become ineligible for *LTD Monthly Benefit* payments;
3.  the end of the Catastrophic Disability Maximum Period Payable shown in the *Schedule of Benefits; or*
4.  the date You die.

#### What claim information is needed for Catastrophic Disability Benefits?

The Filing a Claim section under the *Policy* applies to Catastrophic Disability Benefit coverage.  *We* may also require an interview with *You*.

---

### CAREGIVER RESPITE BENEFIT

---

*We* will pay *You* a Caregiver Respite Benefit for each day of a *Respite Interval*, subject to the conditions below:

1.  *You* must be receiving a Catastrophic Disability Benefit;
2.  The benefit is payable if *Informal Home Care* has been provided for at least 6 continuous months for *You* beginning with *Your Date of Disability*;
3.  The benefit is payable for *Companion Care* received by *You* in *Your* home or a private residence during a *Respite Interval*;
4.  The benefit is equal to the daily *Companion Care* cost incurred, not to exceed $100 per day; and
5.  The benefit is payable to *You* following submission of proof of *Your* incurred costs for *Companion Care* during the *Respite Interval*.

*Companion Care* means medically necessary custodial care furnished during a *Respite Interval* for a minimum of 8 hours per day by a Home Health Care Provider accredited by either the Joint Commission on Accreditation of Health Care Organizations or Community Health Accreditation Program.

*Informal Caregiver* means the person who has primary responsibility of providing *Informal Home Care* for *You*.  A person who is paid for caring for *You* cannot be an *Informal Caregiver*.

*Informal Home Care* means medically necessary custodial care provided at *Your* home or a private residence by an *Informal Caregiver*.  Such care is provided in lieu of confinement in a nursing home, or care received at *Your* home from a paid provider.

*Respite Interval* means a period of one or more consecutive days during which the *Informal Caregiver* is temporarily relieved of the *Informal Home Care* duties. Two *Respite Intervals* are permitted per calendar year, subject to a cumulative total of 14 days per calendar year. Unused days expire on December 31 and cannot be carried over into any future calendar year.

## CAREGIVER TRAINING BENEFIT

*We* will pay *You* a Caregiver Training Benefit if an *Informal Caregiver* incurs an expense to be trained to provide *Informal Home Care* for *You*, subject to the conditions below:

1. *You* must be receiving a Catastrophic Disability Benefit;

2. *Caregiver Training* must be provided by a Home Health Care Provider accredited by either the Joint Commission on Accreditation of Health Care Organizations or Community Health Accreditation Program, by a Nursing Home or by a *Hospital* while *You* are receiving the Catastrophic Disability Benefit. If *You* are in a Nursing Home or in a *Hospital*, the Caregiver Training Benefit will only be payable if the training will make it possible for *You* to return to *Your* residence where *You* can be cared for by the *Informal Caregiver*;

3. The amount of the benefit is the cost incurred for the *Caregiver Training*, subject to $500 maximum per period of *Disability*;

4. The benefit is payable to *You* following submission to *Us* of proof of *Your* costs incurred for *Caregiver Training*.

*Caregiver Training* means training received by the *Informal Caregiver* to care for *You* in *Your* residence.

*Informal Caregiver* means the person who has primary responsibility of providing *Informal Home Care* for *You* . A person who is paid for caring for *You* cannot be an *Informal Caregiver*.

*Informal Home Care* means medically necessary custodial care provided at *Your* home or a private residence by an *Informal Caregiver*. Such care is provided in lieu of confinement in a nursing home, or care received at *Your* home from a paid provider.

## EMERGENCY ALERT SYSTEM BENEFIT

*We* will pay *You* an Emergency Alert System Benefit for the cost to rent or lease an *Emergency Alert System* which will allow *You* to remain in *Your* residence alone, subject to the conditions below:

1. *You* must be receiving a Catastrophic Disability Benefit;

2. The benefit is payable for a medically necessary *Emergency Alert System*;

3. *Your* condition must be such that *You* could not be left alone were it not for the presence of the *Emergency Alert System*;

4. The benefit is the lesser of $25 per month or the actual cost to rent or lease the *Emergency Alert System*;

5. The benefit is payable to *You*, in arrears, after every 6 months, following submission of proof of *Your* incurred costs for the *Emergency Alert System*; and

6. *We* will not pay for any charges incurred as a result of installing, servicing or maintaining the *Emergency Alert System*. This includes, but is not limited to, any charges for normal telephone service while the system is installed or for a home security system.

*Emergency Alert System* means a communication system located in *Your* residence, that is used to summon medical attention in case of a medical emergency.
00042

## WORKSITE MODIFICATION BENEFIT

***What is the Worksite Modification Benefit?***

*We* will assist *You* and the *Policyholder* in identifying modifications *We* agree are likely to help *You* remain at work or return to work. This agreement will be in writing and must be signed by *You*, the *Policyholder* and *Us*.

When this occurs, *We* will reimburse the *Policyholder* for the cost of the modification, up to the greater of:

1.   $1,500.00; or

2.   2 times *Your Last Monthly Benefit*.

*We* will reimburse the *Policyholder* upon completion of the following:

1.   agreed upon modifications made on *Your* behalf are completed;

2.   written proof of expenses incurred by *Your Policyholder* have been provided to *Us*; and

3.   *You* have returned to work and are an *Actively at Work Employee.*

*Last Monthly Benefit* means the monthly benefit paid to *You* immediately prior to *Your* request for benefits under the Worksite Modification Benefit provision, but not including any reductions for *Deductible Sources of Income*.
00044

## CONVERSION PRIVILEGE

***What are Your conversion options if You end employment?***

If *You* end employment with the *Policyholder*, *Your* coverage under the *Policy* will end. *You* may be eligible to purchase insurance under the group conversion *Policy*. To be eligible, *You* must have been insured for at least 12 consecutive months under the *Policyholder's* group plan on the date *You* end employment. *We* will consider the amount of time *You* were insured under this Plan and the plan it replaced, if any.

*You* must apply for insurance under the conversion *Policy*, and pay the first (annual/semi-annual) premium within 31 days after the date *Your* employment ends.

The conversion *Policy* will be at the premium rate and on the form then being made available by *Us* for conversion.

*You* are not eligible to apply for coverage under the group conversion *Policy* if:

1.   *You* are or become insured under another group long-term disability plan within 31 days after *Your* employment ends;

2.   *You* are Disabled under the terms of the *Policy*;

3.   *You* recover from a *Disability* and do not return to work or with the *Policyholder*;

4.   *You* are on a leave of absence; or

5.   *Your* coverage under the *Policy* ends for any of the following reasons:

    a.   The *Policy* is canceled;

    b.   The *Policy* is changed to exclude the class of *Employee*s to which *You* belong;

    c.   *You* are no longer in an eligible class;

    d.   *You* end *Your* working career or retire and receive payment form the *Policyholder's Retirement Plan*; or

    e.   *You* fail to pay the required premium under the *Policy*.
00046

## CLAIM SERVICES

***What other services are available to You while You are Disabled?***

If *You* are *Disabled* and eligible to receive *Disability* benefits under the *Policy*, *We* will evaluate *You* for eligibility to receive any of the following. *We* will make the final determination for any of the following benefits or services.

***Vocational Rehabilitation Service***

Rehabilitation services are available when *We* determine that these services are reasonably required to assist in returning *You* to *Gainful Employment*. Vocational rehabilitation services might include but are not limited to one or more of the following:

1.   job modification;

2.   job retraining;

3.   job placement;

4.   other activities.

Eligibility for vocational rehabilitation services is based upon *Your* education, training, work experience and physical and/or mental capacity. To be considered for rehabilitation services:

1.   *Your* Disability must prevent *You* from performing *Your Regular Occupation*;

2.   *You* must have the physical and/or mental capacities necessary for successful completion of a rehabilitation program, and

3.   there must be a reasonable expectation that rehabilitation services will help *You* return to *Gainful Employment*.

***Social Security Disability Assistance***

When necessary, *We* will provide an advocate for *You* in applying for and securing Social Security *Disability* awards. When *We* determine that Social Security Assistance is appropriate for *You*, it is provided at no additional cost to *You*.
00047

## FILING A CLAIM

***What are the Claim Filing Requirements?***

**Initial Notice of Claim**

*We* ask that *You* notify *Us* of *Your* claim as soon as possible, so that *We* may make a timely decision on *Your* claim. The *Policyholder* can assist *You* with the appropriate telephone number and address of *Our* Claim Department. *You* must send *Us* written notice of *Your Disability* within 30 days of the *Date of Disability*, or as soon as reasonably possible. Notice may be sent to *Our* Claim Department at the address shown on the claim form or given to *Our* Agent.

**Written Proof of Loss**

Within 15 days of *Our* being notified in writing of *Your* claim, *We* will supply *You* with the necessary claim forms. The claim form is to be completed and signed by *You*, the *Policyholder* and *Your Doctor*. If *You* do not receive the appropriate claim forms within 15 days, then *You* will be considered to have met the requirements for written proof of loss if *We* receive written proof, which describes the occurrence, extent and nature of loss as stated in the *Proof of Disability* provision.

**Time Limit for Filing *Your* Claim**

*You* must furnish *Us* with written proof of loss within 91 days after the end of *Your Elimination Period*. The length of the *Elimination Period* is shown in the *Schedule of Benefits*. If it is not possible to give *Us* written proof within 91 days, the claim is not affected if the proof is given as soon as possible. However, unless *You* are legally incapacitated, written proof of loss must be given no later than 1 year after the time proof is otherwise due.

No benefits are payable for claims submitted more than 1 year after the time proof is due. However, *You* can request that benefits be paid for late claims if *You* can show that:

1. It was not reasonably possible to give written proof during the 1 year period, and
2. Proof of loss satisfactory to *Us* was given as soon as was reasonably possible.

**Proof of *Disability***

The following items, supplied at *Your* expense, must be a part of *Your* proof of loss. Failure to provide complete proof of loss may delay, suspend or terminate Your benefits.

1. The date *Your Disability* began;

2. The cause of *Your Disability*;

3. The prognosis of *Your Disability*;

4. Proof that *You* are receiving *Appropriate and Regular Care* for *Your* condition from a *Doctor*, who is someone other than *You* or a member of *Your* immediate family, whose specialty or expertise is the most appropriate for *Your* disabling condition(s) according to *Generally Accepted Medical Practice*.

5. Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).

6. The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.

7. Appropriate documentation of *Your Monthly Earnings*. If applicable, regular monthly documentation of *Your Disability Earnings*.

8. If *You* were contributing to the premium cost, the *Policyholder* must supply proof of *Your* appropriate payroll deductions.

9. The name and address of any *Hospital* or *Health Care Facility* where *You* have been treated for *Your Disability*.

10. If applicable, proof of incurred costs covered under other benefit provisions in the *Policy*.

**Continuing Proof of *Disability***

*You* may be asked to submit proof that *You* continue to be *Disabled* and are continuing to receive *Appropriate and Regular Care* of a *Doctor*. Requests of this nature will only be made as often as reasonably necessary, but not more frequently than once every 3 months. If required, this will be at Your expense and must be received within 45 days of *Our* request. Failure to comply with such a request may delay, suspend or terminate *Your* benefits.

**Examination**

At *Our* expense, *We* have the right to have *You* examined as often as reasonably necessary while the claim continues. Failure to comply with this examination may result in denial, suspension or termination of benefits, unless *We* agree *You* have a valid and acceptable reason for not complying.

**Authorization and Documentation *You* will be asked to supply**

1. *You* will be required to provide signed authorization for *Us* to obtain and release all reasonably necessary medical, financial or other non-medical information in support of *Your Disability* claim. Failure to submit this information may deny, suspend or terminate *Your* benefits.

2. *You* will be required to supply proof that *You* have applied for other Deductible Sources of Income such as Workers' Compensation or Social Security *Disability* benefits, when applicable.

3. *You* will be required to notify *Us* when *You* receive or are awarded other Deductible Sources of Income. *You* must tell *Us* the nature of the Deductible Source of Income, the amount received, the period to which the benefit applies, and the duration of the benefit if it is being paid in installments.
00048TX

### Time of Payment of Claim

As soon as *We* have all necessary substantiating documentation for *Your Disability* claim, *We* will pay *Your* benefit on a monthly basis, so long as *You* continue to qualify for it.

*We* will pay benefits to *You* unless otherwise indicated. If *You* die while *Your* claim is open, any due and unpaid *Disability* benefit will be paid, at *Our* option, to the surviving person or persons in the first of the following classes of successive preference beneficiaries: *Your*: 1) *Spouse*; 2) children including legally adopted children; 3) parents; or 4) *Your* estate.

If any benefit is payable to an estate, a minor or a person not competent to give a valid release, *We* may pay up to $1,000 to any relative or beneficiary of *Yours* whom *We* deem to be entitled to this amount. *We* will be discharged to the extent of such payment made by *Us* in good faith.
00049

### Can You assign Your benefits?

*Your* benefits are not assignable, which means that *You* may not transfer *Your* benefits to anyone else.

### What will happen if a claim is overpaid?

A claim overpayment can occur when *You* receive a retroactive payment from a Deductible Source of Income when *We* inadvertently make an error in the calculation of *Your* claim; or if fraud occurs. The overpayment amount equals the amount *We* paid in excess of the amount *We* should have paid under the *Policy*.

*We* have the right to recover from *You* any amount that is an overpayment of benefits under the *Policy*. *You* must refund to us the overpaid amount. *We* may also, without forfeiting our right to collect an overpayment through any means legally available to *Us*, recover all or any portion of an overpayment by reducing or withholding future benefit payments, including the *Minimum Monthly Benefit*.

In an overpayment situation, *We* will determine the method by which the repayment is made. *You* will be required to sign an agreement with *Us* which details the source of the overpayment, the total amount *We* will recover and the method of recovery. If *LTD Monthly Benefits* are suspended while recovery of the overpayment is being made, suspension will also apply to the minimum *LTD Monthly Benefits* payable under the *Policy*.

### Subrogation – Right of Reimbursement

When any claim payment is made, *We* reserve any and all rights to subrogation and/or reimbursement to the fullest extent allowed by statute and customary practice. Any party to this contract shall not perform any act that will prejudice such rights without prior agreement with *Us*. *We* will bear any expenses associated with *Our* pursuit of subrogation or recovery.
00050

## UNIFORM PROVISIONS

### Entire Contract; Changes

The *Policy*, the *Policyholder's Application*, the *Employee's* certificate of coverage, and *Your Application,* if any, and any other attached papers, form the entire contract between the parties. Coverage under the *Policy* can be amended by mutual consent between the *Policyholder* and *Us*. No change in the *Policy* is valid unless approved in writing by one of *Our* officers. No agent has the right to change the *Policy* or to waive any of its provisions.

### Statements on the Application

In the absence of fraud, all statements made in any signed *Application* are considered representations and not warranties (absolute guarantees). No representation by:

1.  the *Policyholder* in applying for the *Policy* will make it void unless the representation is contained in the signed *Application*; or

2.  any *Employee* in applying for insurance under the *Policy* will be used in defense to a claim under the *Policy* unless it is contained in a written *Application* signed by the Insured and a copy of such *Application* is or has been given to him or to his personal representative.

### Legal Actions

Unless otherwise provided by federal law, no legal action of any kind may be filed against *Us*:

1.  until 60 days after proof of claim has been given; or

2.  more than 3 years after proof of *Disability* must be filed, unless the law in the state where *You* live allows a longer period of time.

### Clerical Error

Clerical error or omission by *Us* to the *Policyholder* will not:

1.  Prevent *You* from receiving coverage, if *You* are entitled to coverage under the terms of the *Policy*; or

2.  Cause coverage to begin or coverage to continue for *You* when the coverage would not otherwise be effective.

If the *Policyholder* gives *Us* information about *You* that is incorrect, *We* will:

1.  Use the facts to decide whether *You* have coverage under the *Policy* and in what amounts; and

2.  Make a fair adjustment of the premium.

### Misstatement of Age

If *Your* age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon *Your* age, as shown in the Benefit Duration Schedule, the amount of the benefit will be the amount *You* would have been entitled to if *Your* correct age were known.

> **Note: A refund of premium will not be made for a period more than twelve months before the date the Company is advised of the error.**

*Incontestability*

The validity of the *Policy* shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue.  The validity of the *Policy* shall not be contested on the basis of a statement made relating to insurability by any person covered under the *Policy* after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

*Conformity with State Statutes and Regulations*

If any provision of the *Policy* conflicts with the statutes and regulations of the state in which the *Policy* was issued or delivered, it is automatically changed to meet the minimum requirements of the statute.

*Workers' Compensation or State Disability Insurance*

The *Policy* is not in place of, and does not affect the requirements for coverage by any workers' compensation or state disability insurance.

*Agency*

Neither the *Policyholder*, any employer, any associated company, nor any administrator appointed by the foregoing is *Our* agent.

*General Provisions*

We have the right to inspect all of the *Policyholder's* records on the *Policy* at any reasonable time.  This right will extend until:

1.   2 years after termination of the *Policy*; or

2.   all claims under the *Policy* have been settled,

whichever is later.

The *Policy* is in the *Policyholder's* possession and may be inspected by *You* at any time during normal business hours at the *Policyholder's* office.

*Premium Provisions*

The *Policyholder* has agreed to deduct from *Your* pay any premiums payable for *Your Contributory* insurance coverage and to remit such premiums for the entire time coverage under the *Policy* is in effect.

Premium charges will begin on the premium due date which coincides with or follows the addition of coverage. Premium charges for termination of coverage will end on the premium due date which coincides with or next follows the termination. If your *Monthly Earnings* increase during the plan year (any time other than September 1), the premium adjustment will take effect on the following September 1.

This method of charging premium is for accounting purposes only. It will not extend any insurance coverage beyond the date it would otherwise have terminated.
00051TX UTS

| DEFINITIONS |
|---|

The following are key words and phrases used in this certificate. When these words and phrases, or forms of them, are used, they are capitalized and italicized in the text. As *You* read this certificate, refer back to these definitions.

*Accident* or *Accidental* means a sudden, unexpected event that was not reasonably foreseeable.
00052

*Actively at Work* or *Active Work* means that *You* must be:

1. working for the *Policyholder* on an active basis; or

2. working at least the minimum number of hours shown in the Schedule of Benefits: and either:

    a. working at the *Policyholder*'s usual place of business; or

    b. working at a location to which the *Policyholder*'s business requires *You* to travel;

3. are paid regular earnings by the *Policyholder*, and

4. not a temporary or seasonal *Employee*.

If the institutions are not in session, *Actively at Work* means *You* would be working for the *Policyholder* for earnings that are paid regularly and *You* would be able to perform the *Material and Substantial Duties* of *Your Regular Occupation*.

*You* will be considered *Actively at Work* if *You* were actually at work on the day immediately preceding:

1. a weekend (except for one or both of these days if they are scheduled days of work);

2. holidays (except when such holiday is a scheduled work day);

3. paid vacations;

4. any non-scheduled work day;

5. excused leave of absence (except medical leave and lay-off); and

6. emergency leave of absence (except emergency medical leave).
00053

*Activities of Daily Living* means:

1. Eating – Feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously.

2. Toileting – Getting to and from the toilet, getting on and off the toilet and performing associated personal hygiene.

3. Transferring – Moving into or out of a bed, chair or wheelchair.

4. Bathing – Washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower.

5. Dressing – Putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.

6. Continence – Ability to maintain control of bowel and bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).
00054

*Annual Enrollment Period* means a period of time during which eligible *Employees* may apply for Voluntary LTD coverage or request changes to their LTD benefit plan. The *Annual Enrollment Period* is shown on the *Schedule of Benefits*.

*Appropriate and Regular Care* means that *You* are regularly visiting a *Doctor* as frequently as medically required to meet *Your* basic health needs. The effect of the care should be of demonstrable medical value for *Your* disabling condition(s) to effectively attain and/or maintain *Maximum Medical Improvement*.
00055

*Cognitively Impaired* means you suffer severe deterioration, or loss of:

1.  memory;

2.  orientation; or

3.  the ability to understand or reason,

so that you are unable to perform common tasks such as, but not limited to, medication management, money management and using the telephone. The impairment in intellectual capacity must be measurable by standardized tests.
00056

*Date of Disability* is the date *We* determine that *You* are *Disabled*.
00057

*Disability* or *Disabled* means that *You* satisfy the definition of either *Total Disability* or *Partial Disability*.
00058

*Disability Earnings* is the wage or salary *You* earn from *Gainful Employment* after a *Disability* begins. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

If *Your Disability Earnings* routinely fluctuate widely from month to month, *We* may average *Your Disability Earnings* over the most recent three months to determine if *Your* claim should continue. If *We* average *Your Disability Earnings*, *We* will not terminate *Your* claim unless the average of *Your Disability Earnings* from the last three months exceeds 80% of *Your Indexed Monthly Earnings*.
00059

*Doctor* means a person legally licensed to practice medicine, psychiatry, psychology or psychotherapy, who is neither *You* nor a member of *Your* immediate family. A licensed medical practitioner is a *Doctor* if applicable state law requires that such practitioners be recognized for purposes of certification of *Disability*, and the treatment provided by the practitioner is within the scope of his or her license.
00061

*Elimination Period* means the number of calendar days at the beginning of a continuous period of *Disability* for which no benefits are payable. The *Elimination Period* is shown in the *Schedule of Benefits*.
00062

*Employee* means an *Actively at Work Employee* whose principal employment is with the *Policyholder*, at the *Policyholder's* usual place of business or such place(s) that the *Policyholder's* normal course of business may require, who is *Actively at Work* for at least the number of hours per week as stated in the *Application* and is reported on the *Policyholder's* records for Social Security and withholding tax purposes.
00069

*Employer* means the *Policyholder* and includes any division, subsidiary, or affiliated company named in the *Policy*.
00097 UTS

*Gainful Occupation, Gainful Employment* or *Gainfully Employed* means the performance of any occupation for wages, remuneration or profit, for which *You* are qualified by education, training or experience on a full-time or part-time basis.
00063

*Generally Accepted Medical Practice* or *Generally Accepted in the Practice of Medicine* means care and treatment which is consistent with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies.
00064

*Gross LTD Monthly Benefit* means that benefit shown in the *Schedule of Benefits* which applies to *You*.
*00065*

*Hospital or Health Care Facility* is a legally operated, accredited facility licensed to provide full-time care and treatment for the condition(s) causing *Your Disability*. It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities which primarily provide custodial, educational or rehabilitative care.
00066

*Indexed Monthly Earnings* means *Your Monthly Earnings* adjusted on each anniversary of benefit payment by the lesser of 10% or the current annual percentage increase in the *Consumer Price Index*. *Your Indexed Monthly Earnings* may increase or remain the same, but will never decrease.

*Consumer Price Index* (CPI-W) means the Consumer Price Index for all urban wage earners and clerical workers in the United States as published by the Bureau of Labor Statistics of the United States Department of Labor or its successors. If the CPI-W is discontinued or changed, *We* may use another index that most closely reflects the cost of living in the United States.

Indexing is only used as a factor in the determination of the percentage of lost earnings while *You* are *Disabled* and working in a *Gainful Occupation*.
00067

*Injury* means bodily injury that is the direct result of an *Accident* and not related to any other cause. The *Injury* must occur, and *Disability* resulting from the *Injury* must begin while *You* are covered under the *Policy*. *Injury* that occurs before *You* are covered under the *Policy* will be treated as a *Sickness*.
00068

*LTD* means Long-Term Disability.
*00070*

*Male pronoun*, whenever used, includes the female.
00071

*Material and Substantial Duties* means duties that:

1.  are normally required for the performance of *Your Regular Occupation*; and

2.  cannot be reasonably omitted or modified, except that if *You* are required to work on average in excess of 40 hours per week, *We* will consider *You* able to perform that requirement if *You* have the capacity to work 40 hours.
00072

***Maximum Capacity*** means, based on *Your* restrictions and limitations:

1. During the first 24 Month consecutive months of *monthly payments*, the greatest extent of work *You* are able to do in *Your Regular Occupation*; and

2. Beyond 24 Month consecutive months of *monthly payments*, the greatest extent of work *You* are able to do in any *Gainful Occupation*.
00073

***Maximum Medical Improvement*** is the level at which, based on reasonable medical probability, further material recovery from, or lasting improvement to, an *Injury* or *Sickness* can no longer be reasonably anticipated.
00074

***Maximum Period Payable***, as shown in the *Schedule of Benefits*, means the longest period of time that *We* will make payments to *You* for any one period of *Disability*.
00075

***Mental Disorder*** means a disorder found in the current diagnostic standards of the American Psychiatric Association.
00076

***Monthly Benefit*** means the LTD Monthly Benefit shown in the *Schedule of Benefits* which applies to *You*.
00077

***Monthly Earnings*** will equal the greater of:

1. $1/12^{th}$ of *Your* last reported gross annual income from *Your Employer* in effect on the day immediately prior to *Your Date of Disability* ; or

2. $1/12^{th}$ of *Your* gross annual income from *Your Employer* in effect on September 1 immediately prior to *Your Date of Disability*.

It includes:
1. hazardous duty pay;
2. longevity pay;
3. *Employee* contributions made through a salary reduction agreement with *Your* Employer to an IRC Section 401(k), 403(b), 501(c)(3), 457 deferred compensation plan, or any other qualified or non-qualified *Employee* Retirement Plan or deferred compensation arrangement; and
4. amounts contributed to *Your* fringe benefits according to a salary reduction arrangement under an IRC Section 125 plan.

It does not include:
1. commissions;
2. bonuses;
3. overtime pay;
4. *Your* Employer's contribution on *Your* behalf to a Retirement Plan or deferred compensation arrangement; or
5. any other extra compensation.
00078 UTS

***Net LTD Monthly Benefit*** means the *Gross LTD Monthly Benefit* less the Deductible Sources of Income.
00079

***Participation in a Riot*** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the person of the insured, if such actions of defense are not taken against persons seeking to maintain or restore law and order including but not limited to police officers and firemen.
00080

*Policyholder* means the person, firm or institution named in the *Policy*, including any covered subsidiaries or affiliates named in the *Policy*.
*00096 UTS*

*Pre-existing Condition* means a condition which;

1.  was caused by, or results from a *Sickness* or *Injury* for which *You* received medical treatment, or advice was rendered, prescribed or recommended whether or not the Sickness was diagnosed at all or was misdiagnosed within 3 months prior to *Your* effective date; and

2.  results in a *Disability* which begins in the first 12 months after *Your* effective date.
00081

*Regular Occupation* means the occupation that *You* are routinely performing when *Your Disability* begins.  *We* will look at *Your* occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific *Policyholder* or at a specific location.
00082

*Retirement Plan* means a plan which provides retirement benefits to *Employee*s and is not funded wholly by *Employee* contributions.
00084

*Riot* shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.
00085

*Schedule of Benefits* means the schedule which is a part of this certificate.
00086

*Sickness* means sickness or disease causing *Disability* which begins while *You* are covered under the *Policy*.
00087

*Spouse* means lawful *spouse* in the jurisdiction in which *You* reside.
00091

*Substance Abuse* means a pattern of pathological use of alcohol or other psychoactive drugs resulting in: impairment of social and or occupational functioning, debilitating physical condition, inability to abstain from or reduce consumption of the substance, or the need for daily substance use for adequate functioning.
00092

*Waiting Period* as shown in the Schedule of benefit means the continuous length of time immediately before *Your* Effective Date during which *You* must be in an Eligible Class. Any period of time prior to the *Policy* Effective Date *You* were Actively at Work for *Your* Employer will count towards completion of the Waiting Period.
00093

*We, Our* and *Us* mean the Dearborn National® Life Insurance Company, Chicago, Illinois.
00094

*You, Your* and *Yours* means the *Employee* to whom this certificate is issued and whose insurance is in force under the terms of the *Policy*.
00095

### IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE
### TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY
### ASSOCIATION

#### (For insurers declared insolvent or impaired on or after September 1, 2011)

Texas law establishes a system to protect Texas *policyholders* if their life or health insurance company fails. The Texas Life and Health Insurance Guaranty Association ("the Association") administers this protection system. Only the *policyholders* of insurance companies that are members of the Association are eligible for this protection which is subject to the terms, limitations, and conditions of the Association law. (The law is found in the Texas Insurance Code, Chapter 463.)

**It is possible that the Association may not protect all or part of your *policy* because of statutory limitations.**

#### Eligibility for Protection by the Association

When a member insurance company is found to be insolvent and placed under an order of liquidation by a court or designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to *policyholders* who are:

- Residents of Texas **(regardless of where the *policyholder* lived when the *policy* was issued)**
- Residents of other states, ONLY if the following conditions are met:
    1. The *policyholder* has a *policy* with a company domiciled in Texas;
    2. The *policyholder's* state of residence has a similar guaranty association; and
    3. The *policyholder* is *not eligible* for coverage by the guaranty association of the *policyholder's* state of residence.

#### Limits of Protection by the Association

**Accident, Accident and Health, or Health Insurance:**
- For each individual covered under one or more policies: up to a total of $500,000 for basic hospital, medical-surgical, and major medical insurance, $300,000 for disability or long term care insurance, and $200,000 for other types of health insurance.

**Life Insurance:**
- Net cash surrender value or net cash withdrawal value up to a total of $100,000 under one or more policies on any one life; or
- Death benefits up to a total of $300,000 under one or more policies on any one life; or
- Total benefits up to a total of $5,000,000 to any owner of multiple non-group life policies.

**Individual Annuities:**
- Present value of benefits up to a total of $250,000 under one or more contracts on any one life.

**Group Annuities:**
- Present value of allocated benefits up to a total of $250,000 on any one life; or
- Present value of unallocated benefits up to a total of $5,000,000 for one contractholder regardless of the number of contracts.

**Aggregate Limit:**
- $300,000 on any one life with the exception of the $500,000 health insurance limit, the $5,000,000 multiple owner life insurance limit, and the $5,000,000 unallocated group annuity limit.

These limits are applied for each insolvent insurance company.

**Insurance companies and agents are prohibited by law from using the existence of the Association for the purpose of sales, solicitation, or inducement to purchase any form of insurance. When you are selecting an insurance company, you should not rely on Association coverage. For additional questions on Association protection or general information about an insurance company, please use the following contact information.**

Texas Life and Health insurance Guaranty
Association
515 Congress Avenue, Suite 1875
Austin, Texas 78701
800-982-6362 or www.txlifega.org

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439 or www.tdi.texas.gov





Administrative Office:

**1020 31st Street • Downers Grove, IL 60515-5591**

Products and services marketed under the Dearborn National® brand and the star logo are underwritten and/or provided by Dearborn National® Life Insurance Company (Downers Grove, IL) in all states (excluding New York), the District of Columbia, the United States Virgin Islands, the British Virgin Islands, Guam and Puerto Rico.

EBA-LONG-CF-001912B

# Exhibit

# 2



ERIC
BUCHANAN &
ASSOCIATES, PLLC
Attorneys at Law

Eric L. Buchanan*
*Licensed in Tennessee
and Georgia*

Hudson T. Ellis
*Licensed in Tennessee, Georgia
and the District of Columbia*

June 7, 2019

Via Facsimile to (877) 286-2351

Dearborn National Life Insurance Company
PO Box 7069
Downers Grove, IL 60515

> Re:      Steven Long
> Claim No.   GDC-9937-01
> Group No.   GFZ71778:723
> BID No.:   H14CZ96H

Dear Sir or Madam:

We notified Dearborn National Life Insurance Company  in our initial letter dated January 17, 2019, that we represent Steven Long in his claim for Long Term Disability (LTD) benefits under the Group Policy held by UTMB - Galveston.

Again, pursuant to our contract with Mr. Long and the fact that he is now represented by counsel, I would appreciate any further correspondence or communication regarding this claim be made through our office. This includes any disbursements of any funds, whether from a settlement or otherwise.

Please let this letter also serve as notice that we are appealing your decision of denial. At this time, I respectfully request you make a favorable decision on Mr. Long's claim for disability benefits.  Please note that this letter also serves of our notice that your denial and refusal to timely pay Mr. Long's claim is in bad faith, and in violation of your common law and statutory duties. We are submitting the following additional evidence in support of Mr. Long's claim that, in addition to the evidence already in the file, should be sufficient to establish his entitlement to benefits.

* Certified as a Social Security Disability Specialist by the National Board of Social Security Disability Advocacy

414 McCallie Avenue • Chattanooga, Tennessee  37402
**Mailing Address: PO Box 11208 • Chattanooga, Tennessee  37401**
Telephone (423) 634-2506 • Fax (423) 634-2505 • Toll free (877) 634-2506
www.buchananddisability.com

Dearborn National Life Insurance Company
June 7, 2019
Page 2

| Ex. No. | Contents | No. Pages |
|:---:|:---:|:---:|
| 1 | Total Health & Rehab<br>Dr. Stephanie Cohen<br>Functional Capacity Evaluation from 4/26/19 | 18 |
| 2 | Family Health Clinic – Galveston<br>Dr. Michael J. Allen, II<br>Medical Assessment Form completed 1/29/19 | 3 |
| 3 | University of Texas Medical Branch at Galveston<br>Records from 7/29/14 to 2/26/19 | 383 |
| 4 | Comprehensive Rehabilitation Services<br>Wallace A. Stanfill, M.ED, LPC<br>Vocational Rehabilitation Assessment completed 6/5/19 | 8 |

Among this additional evidence is a medical opinion form dated January 29, 2019, completed by Mr. Long's primary physician, Dr. Mitchell Allen. Dr. Allen has had the opportunity to see first-hand the severity of Mr. Long's medical issues and the extent of his impairment. In the form, Dr. Allen opines that due to the lumbar disc degeneration, cervical spinal stenosis, sciatica and fixed hardware in his spine, Mr. Long is unable to sit, stand, or walk for more than one hour in an eight hour day; even then, Dr. Allen notes that Mr. Long would be limited to sitting for ten minutes at a time and would be restricted from standing or walking for more than fifteen minutes at a time. Additionally, Dr. Allen notes the pain resulting from Mr. Long's spinal issues would cause regular lapses in his memory as well as his ability to concentrate; Dr. Allen further opined that these lapses in memory and concentration would likely last for several hours at a time, several times a week. Beyond these lapses in cognitive capacities, Dr. Allen also explains that Mr. Long's medical issues would require him to be completely absent from work for at least four-to-five days each month.

Additionally, we provided a Functional Capacity Evaluation Report ("FCE") written by Dr. Stephanie Cohen dated April 26, 2019. Dr. Cohen evaluated Mr. Long's physical capacities by having him perform a myriad of functionality tests, including: (1) dynamic lift tests, (2) NIOSH Static Strength Testing, (3) Range-of-Motion Testing, (4) Grip-Strength Testing to name a few. During the testing, Mr. Long exhibited restricted range of motion in the cervical and lumbar spine, a strength deficit in his right grip, right knee, and right ankle, and he was unable to sit, stand or walk for any duration of time that would even meet the minimum requirements for a Sedentary Occupation physical demand level. Dr. Cohen also observed Mr. Long losing balance and she had to suspend the NIOSH Static Lift Test. After the testing Mr. Long experienced increased pain in his low back, right leg and neck. Based on his overall performance, Dr. Cohen ultimately concluded that Mr. Long is unable to "safely and dependably work at a Sedentary Physical Demand Level, as defined by the Department of Labor, which includes sitting most of the time and standing/ walking up to 1/3rd of the 8-hour work period."

Dearborn National Life Insurance Company
June 7, 2019
Page 3

Along with the FCE and the opinions of Dr. Allen, we are also submitting a vocational rehabilitation assessment by Mr. Wallace Stanfill, a certified vocational rehabilitation counselor, which provides analysis of how Mr. Long's functional abilities, as established by the FCE and Mr. Long's medical records, would translate to an occupational setting. In addition to providing a vocational analysis, Mr. Stanfill's report also contains a discussion of the Transferable Skills Analysis performed by Nancy Gilpatrick, a vocational consultant of Dearborn National.

In Mr. Stanfill's vocational rehabilitation assessment, Mr. Long is identified as "a 52-year-old male worker with a high school education and Associate and Bachelor's degrees in Nursing", who had "been employed exclusively as a Registered Nurse for the past 20 years providing direct patient care at the medium to heavy levels of physical exertion." Accordingly, Mr. Long's previous occupation as a Registered Nurse ("RN") is identified as correlating with the Dictionary of Occupational Titles No. 076.364-010, Medium, SVP-7; a occupation which requires, among other things, "moderate to extreme physical effort", "[f]requent periods of concentrated or focused attention" and "[a]lertness and careful attention to detail." Based on his previous occupation's classification as a medium occupation and based off of all of the medical evidence showing him as restricted to less-than-sedentary work, Mr. Stanfill concludes "that Mr. Long has been totally disabled from his past employment as a Registered Nurse, or any other occupation at any level of physical exertion for which he is trained and reasonably qualified."

In addition to his conclusion that Mr. Long has been and will continue to be disabled from his previous work, Mr. Stanfill also discusses two major flaws in the Transferable Skills Analysis by Nancy Gilpatrick. First, Mr. Stanfill shows that the "three" separate sedentary nursing jobs identified by Ms. Gilpatrick as pursuable by Mr. Long are actually just different titles for a single sedentary nursing position. Specifically, the report states:

> Ms. Gilpatrick analyzed the skill acquired as an RN and assumed a capacity to engage in sedentary work, finding that Mr. Long was capable of returning to work as a Nurse Consultant/ Nurse Case Manager/ Telephonic Nurse (DOT NO. 075-127-014, Sedentary, SVP-7 SOC/OES 29-1141). Ms. Gilpatrick inexplicably appears to [have] assigned three (3) distinctly different job titles and types of jobs to this one sole DOT number.

In addition to pointing out Ms. Gilpatrick's flawed conclusion that different titles equal different occupations, the report shows that her assessment is flawed further in that it excludes any discussion as to the number of "Nurse Consultant" positions that actually exist in the present economy. Accordingly, Mr. Stanfill concluded that Ms. Gilpatrick's Transferrable Skills Analysis "is flawed in that it includes both technical errors and misapplications of standard vocational practices in finding that Mr. Long could secure sedentary employment in jobs so obscure as to be statistically insignificant."

Dearborn National Life Insurance Company
June 7, 2019
Page 4

Finally, we are also providing several hundred pages of medical records from the
University of Texas Medical Branch-Galveston hospital, where Mr. Long is receiving treatment
for his conditions. The hospital records contain treatment notes from several different providers
including but not limited to Dr. Michael Allen (discussed above), Dr. Michael Wayne Cook (Mr.
Long's pain management provider), and Alexanna Godleski, an occupational therapist.
Although all of the UTMB records are pertinent to Mr. Long's disabling conditions, the records
and treatment notes of Dr. Michael Wayne Cook are particularly helpful in understanding the
amount of pain Mr. Long suffers daily. In fact, Dr. Cook was required to perform a caudal
epidural steroid injection on December 20, 2018, due to the severe amount of pain caused by his
conditions lumbar radiculopathy, chronic pain syndrome, and post-laminectomy syndrome.
From Dr. Cook's records as well as the treatment notes of Mr. Long's other providers, it is
apparent that Mr. Long's impairments are chronic and debilitating despite Mr. Long's attempts
to seek reasonable medical treatment.

In light of all of this evidence, we ask that you find Mr. Long disabled and eligible to
continue receiving benefits.

Further, it is our position that because Mr. Long's coverage was obtained as a result of
his previous status as an employee of the University of Texas Medical Branch- a State-run
organization, Mr. Long's claim for long term disability benefits will not be governed by ERISA
but instead governed by Texas law.

**Dearborn's Breach and Statutory Violations:**

Texas law, applicable here, imposes both common law and statutory obligations on
insurers, including Dearborn National Life Insurance Company. Specifically, Texas law dictates
that Dearborn National had a duty to fairly and objectively investigate Mr. Long's claim. It is
also obligated to act in good faith and to pay benefits when its liability is reasonably clear.
Dearborn National's conduct in denying Mr. Long's claim constitutes a breach of its common
law duty of good faith and fair dealing, and Mr. Long has suffered damages as a result of
Dearborn National's breach of this duty.

Specifically, Dearborn National breached its duty of good faith and fair dealing by relying
on a flawed Transferrable Skills Analysis which concluded that Mr. Long was able to obtain
gainful sedentary employment and identified several sedentary occupations that Mr. Long could
perform. The analysis did not include any discussion of the identified occupation's availability
in Mr. Long's marketplace but also blatantly mischaracterized one position as being three
separate and distinct occupations.

Furthermore, it is our position that Dearborn National failed to reasonably consider the
medical evidence presented and based its denial on the self-serving opinions of its medical

Dearborn National Life Insurance Company
June 7, 2019
Page 5

consultants, whose opinions are not based on medical evidence but instead on social media
surveillance reports.

Dearborn National cannot avoid its common law and statutory obligations by relying on
the flawed analyses of its vocational and medical consultants, and transparently discounting or
outright ignoring objective medical evidence showing the extent and nature of Mr. Long's
disabling condition.

Moreover, Dearborn National had additional duties and obligations under the Texas
Insurance Code ("Code") and the Texas Deceptive Trade Practices- Consumer Protection Act
("DTPA"). Its conduct constitutes a violation of Section 541.060 of the Texas Insurance Code
which prohibits an insurer from the practice of "misrepresenting to a claimant a material *fact* or
policy provision relating to coverage at issue." Dearborn National's denial was based on several
material facts which turned out to be misrepresentations as discussed above. Dearborn National
also engaged in false, misleading and deceptive acts and practices in violation of the DTPA. This
conduct was unconscionable and reflected an unconscionable course of conduct, all of which
were a producing case of injuries and damage to Mr. Long. Dearborn National's conduct
includes, but is not limited to:

1. Misrepresenting and/or failing to discuss with Mr. Long, material facts or policy
   provisions relating to coverage at issue;
2. Failing to promptly provide to Mr. Long a reasonable explanation of the basis in the
   policy, in relation to the facts or applicable law, for the denial and delay of this claim;
3. Failing to adopt reasonable standards for prompt investigation of the claim arising
   under its policy;
4. Refusing to pay the claim without conducting a reasonable investigation based upon
   all available information.

Dearborn National engaged in the above actionable conduct knowingly and with actual
knowledge of the falsity, unfairness and deception of these acts and practices.

This conduct and Dearborn National's other acts and omissions were in violation of
Texas Insurance Code, Section 541.001, et seq., 542.001, et seq., including the Insurance Code's
provision for the prompt payment of claims, Section 542.051, et seq. These actions were also in
violation of the Texas Deceptive Trade Practices- Consumer Protection Act Sections 17.46, et.
seq. We also believe Dearborn National's conduct in the handling of this claim was not an
isolated event, but part of a pattern of conduct and a common practice towards its insureds.

## Damages Resulting from Dearborn National's Violations

Those Damages are as follows consist of the monthly benefits owed from his termination
on July 24, 2018 through the present, which are approximately 10 and a half months of back-

Dearborn National Life Insurance Company
June 7, 2019
Page 6

benefit. These unpaid benefits total $17,815.20 ($1713.00 * 10.4). Additionally, Dearborn National is liable for back-interest at 4%, totaling $281.73; as well as statutory prompt payment interest at 18%, totaling $1,310.21.

In addition to serving as an appeal of Dearborn National's denial, this letter is a notice being provided to Dearborn National in order to comply with applicable statutory notice requirements and in an effort to resolve this matter without further time and expense of litigation. If Dearborn National wishes to resolve this matter, please contact our office at your next earliest convenience. In the event this matter is not resolved on or before the expiration of sixty (60) days from the date of Dearborn National's receipt of this notice, suit will be instituted to recover all damages suffered and costs incurred by our client, Mr. Long. Dearborn National's prompt attention in this matter is appreciated.

Sincerely,

Hudson T. Ellis

Enclosures

5/16/2020 12:05 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 43031310
By: Deandra Mosley
Filed: 5/18/2020 12:00 AM

CAUSE NO.  2020-25025

| | | |
|---|---|---|
| STEVEN LONG | ) | IN THE DISTRICT COURT |
| Plaintiff | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| DEARBORN NATIONAL | ) | |
| LIFE INSURANCE COMPANY | ) | |
| Defendant | ) | 189TH JUDICIAL DISTRICT |

## ORIGINAL ANSWER

Defendant Dearborn Life Insurance Company f/k/a Dearborn National Life Insurance Company ("Dearborn") files the following Original Answer to Plaintiff's Original Petition.

### General Denial

1.     Dearborn enters a General Denial pursuant to Rule 92.

### Affirmative Defenses

2.     Plaintiff has failed to state a claim upon which relief can be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant Dearborn Life Insurance Company requests that Plaintiff take nothing by his suit, and that Defendant be awarded its costs of court and attorney's fees, and such other relief, both legal and equitable, to which it may show itself justly entitled.

Respectfully submitted,

By:  _____/s/ Andrew F. MacRae_____
ANDREW F. MACRAE
*State Bar No. 00784510*
LEVATINO|PACE PLLC
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
Tel:  (512) 637-1581
Fax:  (512) 637-1583

Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Original Answer has been forwarded to all counsel of record, this 16th day of May, 2020, via electronic mail and/or electronic filing, as follows:

Hudson T. Ellis
414 McCallie Avenue
Chattanooga, Tennessee 37402

Amar Raval
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098

/s/ Andrew F. MacRae
Andrew F. MacRae

2

**Harris County Docket Sheet**

# 2020-25025

**COURT:**   189th

**FILED DATE:**  4/22/2020

**CASE TYPE:**   OTHER CIVIL



---

### LONG, STEVE

**Attorney: RAVAL, AMAR**

### vs.

### DEARBORN NATIONAL LIFE INSURANCE COMPANY

**Attorney: MACRAE, ANDREW F.**

---

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |

Unofficial Copy Office of Marilyn Burgess District Clerk